134 N.J. Super. 117 (1975)
338 A.2d 830
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID R. CRANMER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued: April 21, 1975.
Decided May 20, 1975.
*119 Before Judges MICHELS, MORGAN and MILMED.
Mr. James I. Peck IV, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Marc J. Friedman, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant was found guilty by a jury of impairing the morals of an eight-year-old boy, in violation of N.J.S.A. 2A:96-3, and was sentenced by the trial court to the Diagnostic Unit at Rahway for an indeterminate term not to exceed three years, with instructions that he receive psychiatric treatment. He appeals.
The evidence of defendant's guilt is substantial. The State's proofs established that while the infant victim and his infant friend were fishing in Alceon Lake near Pitman, New Jersey, defendant, who was not previously known *120 to them, approached and proceeded to help them fish. The friend became frightened and asked the victim to leave with her. When he would not leave, she left, went to the victim's home and informed his mother of what occurred. After she left defendant told the victim that he wanted to give him (the victim) "a physical". The victim accompanied defendant into the woods where defendant pulled down the victim's pants and underwear and committed the criminal act described by the victim at trial as follows: "He took my penis and went to put a stick up my behind and I started to cry and my brother came and he saw my brother."
When the victim's 17-year-old brother arrived he observed the victim, who was crying, pulling up his pants in defendant's presence. Defendant told the victim's brother that the victim had fallen while he "was going to the bathroom." Defendant got on his bicycle and rode away. When the victim told his brother what had occurred, his brother went after defendant. Unable to catch him, he observed him heading in the direction of Glassboro. The victim's mother then arrived and all three returned to the victim's home. The police were called and the incident detailed to them. In addition, the victim gave them a description of defendant, who was subsequently apprehended.
Defendant contends on appeal that the trial judge erred in (1) prohibiting full cross-examination of the victim, (2) failing to compel the victim to return to the witness stand for completion of cross-examination, (3) denying his motion to strike the victim's direct testimony and grant a judgment of acquittal, and (4) failing to strike or give a cautionary instruction with respect to testimony by the police officers as to the circumstances surrounding defendant's apprehension. We have carefully considered each of the points raised and the arguments advanced in support of them by defendant and find them lacking in merit.
Defendant's argument that he was prohibited from completing his cross-examination of the infant victim by the *121 trial judge's failure to compel the infant to continue testifying and was thereby deprived of his constitutional right of confrontation requires some discussion. The infant victim became extremely emotionally upset during cross-examination. He broke down on the witness stand, sobbing uncontrollably. The judge properly took a recess and with the aid of the infant victim's mother attempted to calm him so that he could return to the courtroom for the completion of his testimony. Both were unsuccessful, and the infant refused to testify further. He again broke down, sobbing hysterically. The trial judge thereupon found that the infant victim would be unable to respond to questions put to him on cross-examination, commenting: "I fear that he may be so emotionally overcome that it may affect, adversely affect, him for a long period of time." The judge refused to compel the infant victim to return to the stand and denied defendant's motion to strike his testimony at the conclusion of the State's case.
The constitutional right of confrontation afforded by the Sixth Amendment of the United States Constitution as well as N.J. Const. (1947), Art. 1, par. 10, in general guarantees the accused the opportunity of cross-examination in criminal proceedings. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The purpose served by the confrontation requirement was succinctly stated in California v. Green, supra, as follows:
* * * Confrontation: (1) insures that the witness will give his statements under oath  thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery *122 of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility. [399 U.S., at 158, 90 S.Ct., at 1935, 26 L.Ed.2d, at 497.]
The right of cross-examination, however, is not without limitation or restriction. The trial court has broad discretion in determining the proper limitations of cross-examination of a witness whose credibility is in issue. State v. Pontery, 19 N.J. 457, 472-473 (1955); State v. Zwillman, 112 N.J. Super. 6, 17-18 (App. Div. 1970), certif. den. 57 N.J. 603 (1971).
Here, cross-examination of the infant victim by defendant covered substantially the same ground as was covered by the State in its direct examination. It was only after the defense proceeded to cross-examine on the events which took place after the offense had occurred that the infant became so upset that the cross-examination could not continue. We are satisfied that the trial judge properly limited the cross-examination of the infant victim under the circumstances here present, and in doing so did not deprive defendant of his constitutional right of confrontation. Thus, we are also of the view that the infant's testimony was properly admitted, and that the trial judge did not err in denying defendant's motion to strike this testimony. See 5 Wigmore, Evidence (Chadbourne rev. 1974), § 1390, at 134-135, wherein the author comments:
But, where the death or illness prevents cross-examination under such circumstances that no responsibility of any sort can be attributed to either the witness or his party, it seems harsh measure to strike out all that has been obtained on the direct examination. Principle requires in strictness nothing less. But the true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss. Courts differ in their treatment of this difficult situation; except that, by general concession, a cross-examination begun but unfinished sufficies if its purposes have been substantially accomplished.
*123 Moreover, the victim positively identified defendant in the courtroom on direct examination. While defense counsel had not yet cross-examined the victim as to his identification of defendant, his 17-year-old brother also positively identified defendant at the trial and his brother's cross-examination was completed by defense counsel. Consequently, the failure of defense counsel to complete cross-examination of the infant victim was harmless beyond a reasonable doubt. There was no possibility that such failure to complete cross-examination led to an unjust result. See State v. Macon, 57 N.J. 325, 335-337 (1971). The evidence of defendant's guilt was overwhelming.
Affirmed.