236 N.J. Super. 243 (1989)
565 A.2d 706
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF-RESPONDENT,
v.
V.K.[1], DEFENDANT-APPELLANT, AND L.K., DEFENDANT. IN THE MATTER OF J.K. AND V.K., MINORS.
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 1989.
Decided October 11, 1989.
*249 Before Judges KING, SHEBELL and KEEFE.
V.J.K., appellant, pro se.
Peter N. Perretti, Jr., Attorney General, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel; Modestino Carbone, Deputy Attorney General, on the brief).
Alfred A. Slocum, Public Advocate, attorney for Law Guardian Program (Susan Slaff, Assistant Deputy Public Defender, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant V.J.K. appeals from an order of the Family Part terminating parental rights. We reverse and remand.
On June 8, 1982, the New Jersey Division of Youth and Family Services (DYFS) brought a complaint against V.J.K. and L.K. for custody of the defendants' two children, J.K. and V.K., whereupon the court ordered that DYFS be granted custody of the two children pending a final order of disposition. The trial court conducted hearings intermittently until March 6, 1985. DYFS moved before the trial court on July 18, 1984 to amend its pleadings to petition for the termination of V.J.K. and L.K.'s parental rights. Its motion was denied, and DYFS appealed. We summarily reversed the trial court's order, permitting DYFS to amend its pleadings.
On May 30, 1985, the trial court denied DYFS' petition to terminate parental rights. The court found the allegations of abuse and neglect to be supported by a preponderance of the evidence, but concluded that DYFS did not show by clear and convincing evidence that V.J.K. and L.K.'s parental rights should be terminated. The court stated "there is no strong evidence that this family cannot overcome its past problems with proper treatment and supervision." On June 24, 1985, the court ordered that the parties arrange for defendants to be interviewed by the Robert Eisner Institute for the purpose of *250 determining the feasibility and logistics of reunification of V.J.K. and L.K.'s family.
DYFS appealed the trial court's determination. We granted DYFS' motion for a stay and remanded for "reconsideration of the June 24, 1985 order in light of current circumstances...." We further ordered that the trial judge "take the testimony of [L.K.] and [V.J.K.] and hear any other testimony and receive any other evidence relevant to their presentation...."
By order dated May 28, 1986, the trial court terminated the rights of both parents and committed V.K. and J.K. to the guardianship of DYFS. Both parents appealed; however, on April 5, 1988, L.K. submitted a certification in which she stated, "I do not wish to be involved in the appeal of the lower court decision, and I respectfully request that I be allowed to remove myself from the case altogether." We granted V.J.K.'s request for nonjoinder and modification of the appeal, and dismissed the appeal as to L.K.
V.J.K. and L.K. were married on January 25, 1976. Two children are the subject of the within action; V.K., born December 27, 1977, and J.K., born March 31, 1979.
This matter first came to the attention of DYFS after L.K. called the Saint Mary's Hospital Hotline in February 1981 for assistance. She felt "overwhelmed" with the care of her children, ages 3 and 2, and was referred by the hotline to DYFS. The family had moved from Maryland three weeks earlier, where they had been receiving assistance from an agency which performed services similar to those provided by DYFS. Both parents have a history of emotional instability and inability to control their behavior. The trial court heard extensive testimony of physical and sexual abuse of the two children involving the parents. The parents were informed that DYFS intended to place the children in a foster home, but they would not agree to voluntary placement of the children. After DYFS was granted custody of the children by the trial court, the children were placed in a foster home. The parents received regular supervised *251 visitation with V.K. and J.K.. The children later informed a DYFS worker that they enjoyed the visits with their natural parents, but preferred living in their foster homes and did not want to go home with their parents because their parents did "bad things." V.J.K. and L.K. were tried on criminal charges of child abuse in February 1985 and were acquitted.

I.
Appellant's contention that due process was denied, and the defense unfairly prejudiced because of the disparity in resources between DYFS and the defendant, is clearly without merit. R. 2:11-3(e)(1)(E). Any disparity of resources is counterbalanced by the requirement that the State be held to a standard equal to or greater than that of "clear and convincing evidence" in order to terminate parents' rights to their children. Santosky v. Kramer, 455 U.S. 745, 768-70, 102 S.Ct. 1388, 1402-03, 71 L.Ed.2d 599, 616-17 (1982).

II.
Appellant asserts that the trial judge reviewed and adopted the recommendation of the Child Placement Review Board (Board) and did not make an independent determination based on the evidence before him.
The Board is established in each county pursuant to N.J.S.A. 30:4C-57. The Family Part judge is specifically authorized pursuant to N.J.S.A. 30:4C-61 to review the Board's report prior to rendering a decision, however, such review is not mandatory. While the trial court would have been acting within its statutory authority if it had reviewed the Board's recommendation prior to rendering its decision, it is clear from the record that the trial court did not view the Board's recommendation prior to rendering a decision. The trial court was of the opinion that this was the more fair procedure to follow. Thus, appellant's assertion is without factual basis in the record *252 and cannot be accepted. Therefore, appellant's arguments as set forth in Points II and III of his brief are without basis.

III.
Appellant contends that the acquittal of himself and his wife in the criminal jury trial on charges of child abuse precludes under principles of double jeopardy the trial court's determination that defendants abused their children and that termination of their parental rights was warranted. There is no merit to this contention. Cf. State v. DeLuca, 208 N.J. Super. 422, 429 (App.Div. 1986), rev'd on other grounds, 108 N.J. 98 (1987), cert. den. 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).
Appellant also argues that the State is barred under res judicata principles from pursuing the civil action after his acquittal in the criminal proceeding. The standard in the criminal proceeding required the State to prove all elements of its case beyond a reasonable doubt. As noted above, the standard in this case is lesser. Thus, res judicata principles are not appropriate here. See State v. Pitner, 42 N.J. 251, 256 (1964); see also In re Pennica, 36 N.J. 401, 418 (1962); Galbraith v. Hartford Fire Insurance Company, 464 F.2d 225 (3d Cir.1972).
The present civil matter is not barred as a result of appellant's criminal acquittal under either double jeopardy or res judicata principles.

IV.
Appellant contends that the method used to obtain the testimony of the children constitutes a serious denial of his right of confrontation. He states that "[t]he infringement on the right of confrontation means that both the guardianship and the abuse findings must be reversed."
"The constitutional right of confrontation afforded by the Sixth Amendment of the United States Constitution as well *253 as N.J. Const. (1947), Art. 1, par. 10, in general guarantees the accused the opportunity of cross-examination in criminal proceedings." State v. Cranmer, 134 N.J. Super. 117, 121 (App. Div.), certif. den. 68 N.J. 283 (1975) [Emphasis supplied]. The Sixth Amendment right of confrontation is not applicable to civil proceedings. See Williams v. Trans World Airlines, 149 N.J. Super. 585, 589 (Ch. Div. 1977); M. v. F., 95 N.J. Super. 165, 172 (J. & D.R. Ct. 1967). "The right of confrontation, although respected in the civil sphere, is primarily a criminal right. It is not carried to its full extent in civil proceedings." State in Interest of S.F., 139 N.J. Super. 337, 339-40 (J. & D.R. Ct. 1976).
We have recognized that in a termination proceeding "it is of great importance that the evidence upon which judgment is based be as reliable as the circumstances permit and that the answering parent be given the fullest possible opportunity to test the reliability of the petitioner's essential evidence by cross-examination." In re Cope, 106 N.J. Super. 336, 343 (App. Div. 1969). Nonetheless, it is clear that "[i]n a custody proceeding the judge has broad discretion to conduct a private examination of a child." N.J. Youth & Family Serv. Div. v. S.S., 185 N.J. Super. 3, 7 (App.Div.), certif. den. 91 N.J. 572 (1982).
Appellant's reliance on Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) is misplaced. In Coy the Court found that the Sixth Amendment to the Constitution requires that a defendant be permitted a face-to-face confrontation with his accuser. Id. at ___, 108 S.Ct. at 2802, 101 L.Ed.2d at 866. The Court specifically noted that this right was one accorded under the Sixth Amendment to criminal defendants. Id. at ___, 108 S.Ct. at 2799-800, 101 L.Ed.2d at 863.
We cannot conclude that the trial judge acted unreasonably in balancing the need to protect the children against appellant's need to see and participate when the children answered the judge's questions or answered questions submitted by the attorneys. S.S., 185 N.J. Super. at 7.
*254 Appellant's contention that the trial court erred in permitting the children's attorney to be present while excluding counsel for appellant and DYFS is clearly without merit. R. 2:11-3(e)(1)(E). See Doe v. State, 165 N.J. Super. 392, 408 (App.Div. 1979); New Jersey Div. of Youth & Family Serv. v. Wandell, 155 N.J. Super. 302, 305-06 (J. & D.R.Ct. 1978).

V.
Appellant maintains that the trial judge relied on information not in evidence, as well as incompetent evidence and testimony, thus requiring reversal of termination of parental rights and abuse findings. We are satisfied that the trial judge's findings could reasonably have been attained on credible and proper evidence present in the record; therefore, his findings will not be disturbed. See Pioneer National Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App.Div.), aff'd 78 N.J. 320 (1978). See also Barlet v. Frazer, 218 N.J. Super. 106, 111 (App.Div. 1987); McDonald v. Mianecki, 159 N.J. Super. 1, 25 (App.Div. 1978), aff'd 79 N.J. 275 (1979).

VI.
Appellant asserts that the trial judge in terminating parental rights "based his findings on evaluations which were conducted years ago, not on current information ...[,]" and that "[t]he trial court judge did not find, and could not find, that the defendant has forsaken his parental obligations."
The trial court terminated defendants' parental rights after appellant testified upon remand. The trial judge stated that "[t]he court further finds that the Defendant, [V.J.K.], is incredible as a witness and projects himself as one without fault; thus the court concludes that rehabilitation in reuniting of the family, because of the Defendants' actions, cannot be achieved...." It is clear that the trial court based its decision on appellant's testimony that was given immediately before the decision was rendered. The court's decision was based on *255 recent information, and appellant's contention that the court's finding was based on outdated information is without merit. Substantial evidence was presented at trial that appellant had continued to sexually abuse his children when the opportunity was available to him. He should not be allowed to gain tactical advantage from the fact that he was denied further opportunity.
The scope of our review of a trial court's fact-finding is a limited one. "Trial court findings are ordinarily not disturbed unless `they are so wholly unsupportable as to result in a denial of justice,' and are upheld wherever they are `supported by adequate, substantial and credible evidence.'" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988), quoting Rova Farms Resort & Investors Ins. Co., 65 N.J. 474, 483-84 (1974). An appellate court "may make new and independent findings of fact in cases tried without a jury, [citations omitted] but ... `when the result of the contest must turn on the truthfulness of witnesses, the superior advantage of the trial judge in seeing and hearing and appraising the disputants must ordinarily be regarded as the fulcrum on which the issue should be resolved.'" Rubel & Jensen Corp. v. Rubel, 85 N.J. Super. 27, 39-40 (App.Div. 1964), quoting Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 423-24 (1961). The trial court's findings are supported by the record.

VII.
Appellant contends that he was denied, at trial and on appeal, the effective assistance of counsel. It is clear that in New Jersey, indigent parents are entitled to the assignment of counsel without charge for "proceedings which may result in either temporary loss of custody or permanent termination of their parental rights." Crist v. N.J. Div. Youth & Family Services, 135 N.J. Super. 573, 575 (App.Div. 1975). This court has stated that "[s]imple justice demands nothing less in light of the magnitude of the consequences involved." Ibid.
*256 "The right to custody of one's children and the protection of the integrity of the family from arbitrary governmental action is a fundamental constitutional right." In re Guardianship of C.M., 158 N.J. Super. 585, 591 (J. & D.R.Ct. 1978). No reported New Jersey case has decided the issue of whether indigent parents whose rights to their children were terminated at the trial level are entitled to appointment of counsel on appeal. We need not decide whether appellant should have been appointed counsel for this appeal as it is apparent that he has competently and adequately brought before this court all relevant issues for review.
Appellant contends as well that he was denied the effective assistance of counsel at trial. A careful review of the record reveals that appellant's contention is without merit.
Appellant alleges that his trial attorney was ineffective as he "refused to take any issues up on appeal, and refused to appeal the decision of the trial court...." However, the trial court's determination that defendants could not testify was appealed to this court and the matter was remanded to allow the defendants to testify. Defendants filed an appeal pro se, thus the responsibility of the trial attorney with respect to further conduct of the proceedings was terminated after expiration of the time for appeal. R. 1:11-3.
There is nothing in the record to suggest that trial counsel's reluctance to represent defendants on appeal prejudiced defendants at trial. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93, reh'g den. 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).
Appellant urges that trial counsel should not have represented both appellant and his wife as such representation *257 constituted a conflict of interest. Appellant states that "[t]here is no question but that all of the family problems have their root, their source in the former co-defendant," and notes that "[t]he conflict of interest is further heightened by the fact that the defendant has always wanted his children back, while, unknown to the defendant, the former co-defendant did not want the children back."
DYFS' attorney raised at trial a possible conflict of interest concerning defendants' counsel representing defendant V.J.K. in the related criminal matter. Defendants at that time stated that they did not believe there was a conflict of interest, and that they wanted trial counsel to represent both of them in the civil trial.
The record does not support appellant's contention that all of the family problems were rooted in his wife, and there is no evidence that she was not working for the return of her children. Her certification removing herself from the appeal, dated April 5, 1988, stated:
I love my children very much and would like nothing better than to have them back with me. However, due to the fact that they have been in foster care for many years, I believe that it is in their best interests to remain there where they are happy and secure.
Our careful review of the record reveals no conflict of interests between appellant and his wife that would result in prejudice to appellant. Their interests were not divergent; both sought to establish that DYFS' claim that they had sexually abused their children was groundless. See United States ex rel. Smith v. State of New Jersey, 341 F. Supp. 268, 271 (D.N.J. 1972).
Appellant contends that trial counsel was ineffective because counsel did not cite cases in his summations after the first or second round of hearings; counsel did not submit a written summation to the trial court even after requested to do so by the trial court; and counsel did not appeal to this court the trial court's refusal to order the removal of the therapist for appellant's daughter.
*258 Matters of trial strategy are "entrusted to the sound discretion of competent trial counsel." State v. Coruzzi, 189 N.J. Super. 273, 321 (App.Div.), certif. den. 94 N.J. 531 (1983). "Mere improvident strategy, bad tactics or mistake do not amount to ineffective assistance of counsel unless, taken as a whole, the trial was a mockery of justice." State v. Bonet, 132 N.J. Super. 186, 191 (App.Div. 1975).
The trial court requested that all the attorneys submit a written summation to the court. Defendants' counsel informed the court on two occasions that it would not be submitting a written summation, stating that "I can articulate orally what would be very ponderous for me in writing." Trial counsel felt that he would be more effective in delivering an oral rather than a written summation. Appellant has not shown that "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305, 325 (1986).
In considering the trial record, it cannot be said that trial counsel's decision to deliver his summation verbally rather than in writing constituted an error which may have changed the result of the proceeding. See id. at 375, 106 S.Ct. at 2582, 91 L.Ed.2d at 319; State v. Fritz, 105 N.J. 42, 58 (1987).

VIII.
Appellant's contentions raised in Points X, XI, XII, XIII, and XIV of his brief are clearly without merit as there is no basis in the record for appellant's contentions. Further, the factual findings of the trial judge are supported by the evidence and we find no reason to disturb them. R. 2:11-3(e)(1)(A) and (E).

IX.
Appellant contends that the trial court applied an incorrect standard of proof in determining that parental rights should be terminated and guardianship of the children be placed *259 with DYFS. Appellant first argues that "[b]y amending the complaint to include a complaint for the guardianship, in the middle of the fact finding hearing based on a preponderance of the evidence standard, the procedure was established so that guardianship could only be established on a preponderance of the evidence standard, which is insufficient to terminate parental rights."
The Supreme Court in Santosky, 455 U.S. 745, 757, 102 S.Ct. 1388, 1396-97, 71 L.Ed.2d 599, 609 stated:
[F]undamental fairness may be maintained in parental rights termination proceedings even when some procedures are mandated only on a case-by-case basis, rather than through rules of general application. [Citation omitted]. But this Court never has approved case-by-case determination of the proper standard of proof for a given proceeding. Standards of proof, like other "procedural due process rules[,] are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions." Mathews v. Eldridge, 424 US, [319] at 344, 96 S.Ct. 893, at 907, 47 L.Ed.2d 18 (emphasis added). Since the litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance. Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard. [Footnote omitted].
We do not understand Santosky to mandate that the complaint must be finalized to include the demand for parental rights prior to trial.
Although the trial court refused to allow DYFS to amend its complaint to include the guardianship action, the amendment of the complaint to include the guardianship action of which appellant complains was expressly authorized by order of this court on interlocutory appeal. We find no indication of any prejudice to appellant in the presentation of his case because of this amendment.
Appellant infers that because the DYFS action began only as a custody and not a guardianship proceeding, the trial court was incapable of applying the guardianship "clear and convincing evidence" standard rather than the custody "preponderance *260 of the evidence" standard under which the DYFS' action was first brought. We do not accept this argument.
Appellant argues persuasively that the trial court must make a finding based on clear and convincing evidence that the abuse occurred in order to grant guardianship to DYFS and terminate the defendant's parental rights. The trial court stated in its second opinion that the issues to be decided were as follows:
First: Whether the DYFS allegations that the Defendants, [V.J.K.] and [L.K.], abused their children, [J.K.] (D.O.B.  3/31/79) and [V.K.] (D.O.B.  12/27/77), is supported by a preponderance of the evidence. Second: Whether it is shown by clear and convincing evidence that the best interest of the children can be served by the termination of Defendants' parental rights and the guardianship should be granted.
The trial court found "the credible testimony that there was sexual child abuse by the Defendants, [V.J.K.] and [L.K.] of their children, [J.K. and V.K.], as alleged and that the Plaintiff has sustained the burden by a preponderance of evidence that said abuse occurred as alleged." [Emphasis supplied]. The court also found that "rehabilitation in reuniting of the family, because of the Defendant's actions, cannot be achieved and in considering the best interest of the children, which is paramount in the matter, that guardianship should be granted. DYFS has sustained the burden by clear and convincing evidence...."
N.J.S.A. 30:4C-15 provides, in relevant part, that "[w]henever ... it appears that the best interests of any child under the care or custody of the Bureau of Childrens Services require that he be placed under guardianship ... a petition ... may be filed with the juvenile and domestic relations court...." Pursuant to N.J.S.A. 30:4C-20:
If upon the completion of such hearing the court is satisfied that the best interests of such child require that he be placed under proper guardianship, such court shall make an order terminating parental rights and committing such child to the guardianship and control of the Bureau of Childrens Services, and such child shall thereupon become the legal ward of such bureau, and such bureau shall be the legal guardian of such child for all purposes, including the placement of such child for adoption.
*261 DYFS must establish the statutory criteria by a standard of clear and convincing evidence if the parents' rights are to be terminated. See Santosky, 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 617; New Jersey Div. of Youth and Family Services v. A.W., 103 N.J. 591, 612 (1986); In re Guardianship of J.P.M., 210 N.J. Super. 512, 519 (Ch.Div. 1985).
In A.W. our Supreme Court directed:
To the basic focus upon the injury to the child we would add what we believe is implicit  that in a termination proceeding a trial court would determine that: (1) The child's health and development have been or will be seriously impaired by the parental relationship.

....
(2) The parents are unable or unwilling to eliminate the harm and delaying permanent placement will add to the harm.

....
(3) The court has considered alternatives to termination.

....
(4) The termination of parental rights will not do more harm than good. [103 N.J. at 604-10].
The finding that "[t]he child's health and development have been or will be seriously impaired by the parental relationship," translates in the present case to the finding that defendants sexually abused their children and that such abuse was harmful to the children. While legislative enactment makes it clear that sexual abuse of children by their parents seriously impairs a child's health and development, in order to prove such impairment it must be shown that the children were in fact abused by the parents. See N.J.S.A. 9:6-1 et seq.
Although A.W., 103 N.J. at 612, does not specifically state that the underlying finding of abuse, in order to support termination of parental rights, must be made by clear and convincing evidence and not merely by a preponderance of the evidence, we are convinced that such a standard necessarily follows. Here, the decision to terminate parental rights was rooted in and essentially flowed from the determination that the child abuse was a reality. If the higher standard of clear and convincing evidence is to have any efficacy, it must be applied *262 to the underlying basic finding used to support the decision to terminate. The trial judge failed in this regard.

X.
Appellant argues also that "best interest is not an issue in terminating parental rights, and the use of such a consideration was a serious error on the part of the trial court judge."
"It is clear that a `best interests' determination is never sufficient to terminate parental rights; the statutory criteria must be proved." Matter of Baby M, 109 N.J. 396, 428-29 (1988) [footnote omitted]. Our Supreme Court has interpreted the statutory criteria to be the four points raised in A.W., which we noted earlier. Id. at 427.
The trial court stated in its second written opinion, "it is in the best interests of the children's welfare and well being to never return them to their biological parents," and that "the uniting of the biological parents with the children is not in the best interest of the children...." The court concluded, "in considering the best interest of the children, which is paramount in the matter, that guardianship should be granted." It thus appears that the trial judge may have applied the "best interest" test alone, which was prohibited by our Supreme Court in Matter of Baby M, in terminating defendants' parental rights.
The trial judge's decision was rendered prior to our Supreme Court's opinions in A.W. and Baby M; however, we are obliged to apply the law as it now exists. See State v. Lawn King, Inc., 169 N.J. Super. 346, 353 (App.Div. 1979), aff'd 84 N.J. 179 (1980); In re Application of Ronson Corporation, 164 N.J. Super. 68, 71 (App.Div. 1978), certif. den. 79 N.J. 492 (1979). We must therefore set aside the trial court's termination of appellant's parental rights.
Appellant argues that the present matter should be reversed without a remand to the trial court for a determination, *263 and that we should exercise original jurisdiction and decide the issues presented. Our Supreme Court has stated, however, that "`[a] proceeding to terminate parental rights involves the State's intrusion into the most fundamental and private of social bonds  that of the family. The warmth and complexity of such relationships should not be assessed against the typed words of a cold record.'" A.W., 103 N.J. at 617 quoting In re Michael B., 58 N.Y.2d 71, 75, 445 N.E.2d 637, 639, 459 N.Y.S.2d 254, 256 (Cooke, C.J., concurring), reargument den. 58 N.Y.2d 1114, 462 N.Y.S.2d 1029, 449 N.E.2d 746 (1983). See also Matter of Baby M, 109 N.J. at 463. "[W]hen it is perceived that resolution of the issue most likely requires ... reconsideration of the legal significance of established facts under the amended law, a remand of the matter for an application of the new law to the relevant facts is appropriate." Riggs v. Long Beach Tp., 101 N.J. 515, 523-24 (1986) [footnote omitted].
We therefore reverse and remand for the trial court to determine whether the State has proved its allegations of child abuse by clear and convincing evidence, rather than simply by a preponderance of the evidence as originally found, and whether the criteria of termination of parental rights as outlined in A.W. have been met by clear and convincing evidence.
The Family Part shall schedule further argument and final disposition, based upon the present record, within 30 days of the date of this opinion. We do not retain jurisdiction.
NOTES
[1] V.K. is referred to throughout opinion as V.J.K. to distinguish from the infant V.K.