**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2379-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GABRIEL C. BARNES,

    Defendant-Appellant.

_____

Submitted March 1, 2021 – Decided March 22, 2021

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-01-0178.

Ferro & Ferro, attorneys for appellant (Nancy C. Ferro, on the briefs).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gabriel C. Barnes appeals from a January 21, 2020 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Following a four-day jury trial in February 2015, defendant was convicted of one count of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1; four counts of first-degree robbery, N.J.S.A. 2C:15-1; one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and one count of fourth-degree conspiracy to commit an act of false swearing, N.J.S.A. 2C:5-2, N.J.S.A. 2C:28-2. He was acquitted of one count of fourth-degree false swearing, N.J.S.A. 2C:28-2.

On June 13, 2015, defendant was sentenced to an aggregate term of eighteen years in prison, subject to an eighty-five percent parole ineligibility period in accordance with the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

We affirmed defendant's conviction and sentence in an unpublished opinion. In our opinion, we explained why we rejected defendant's argument that the trial court erred in denying his motion for a new trial, which he claimed was warranted because, among other reasons, the prosecutor improperly

"vouch[ed] for the credibility of [witness] Detective Lydell James." We also found no merit to defendant's contentions relating to a photo array, a <u>Wade</u> hearing,[1] or his sentence. <u>State v. Barnes</u>, No. A-0210-15T1 (App. Div. Nov. 1, 2017) (slip op. at 2, 13). The Supreme Court later denied defendant's petition for certification. <u>State v. Barnes</u>, 233 N.J. 216 (2018).

In our earlier opinion, we summarized the facts leading to defendant's conviction. There, we stated the following:

> At trial, the State presented several witnesses who testified that defendant and another man robbed them at gunpoint. Defendant also struck one of the witnesses several times in the head with the gun, which caused the magazine clip to fall out of the gun onto the ground. Defendant and the other man ran from the scene. They returned later in a pickup truck, lost control of the truck, hit a house, and again ran away.
>
> The police found the magazine clip at the scene, and located the gun on the floor of the truck. Their investigation further revealed that defendant had reported the pickup truck had been carjacked and that the owner of the vehicle was defendant's uncle. After learning that a carjacking had not occurred, and because of the truck's connection to the robbery, the police placed defendant's photo into the array presented to the victims of the robbery. Several victims identified defendant's photo as the man who had robbed them at gunpoint.
>
> [See <u>Barnes</u>, slip op. at 3.]

---

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

We also noted that "four witnesses testified that two men robbed them and that one of the men carried a handgun. Three of these witnesses signed sworn statements that they identified defendant in a photo array as the man who was carrying the gun when they were robbed." Id. at 11.

On January 23, 2019, defendant filed his petition for PCR and a supporting certification dated January 9, 2019. In his certification, he asserted that his trial counsel "failed to raise an important issue which would have placed the credibility of the principal State[']s witness in serious doubt and could have resulted in the suppression of his testimony."

Defendant stated that the principal witness against him was Detective James, who testified that he did not know defendant, but was actually known to defendant's family because the detective had been dating defendant's mother's cousin. Defendant also added that after his arrest, his "mother met with Detective James who propositioned her and made it clear that if she would cooperate with him in a sexual tryst that he could take care of my case." Defendant also certified that the "sexual meeting" never occurred and Detective James testified against him.

According to defendant, the prosecutor argued to the jury there was no reason for Detective James to conduct an improper photo array in this case

A-2379-19

because the detective did not know defendant. He contended that had the jury known that the detective actually knew defendant and his family and entered into an agreement with defendant's mother to exchange favorable treatment for sex, it could have totally undermined the State's case against defendant.

Defendant further explained that his trial counsel knew about the situation and was asked to raise it but did not. He added that his counsel should have raised the issue so a hearing could have taken place to determine if Detective James could testify and if so, his attorney should have called his parents to challenge James' credibility.

In further support of his PCR petition, defendant filed a June 20, 2019 certification from his mother, Karen Parker. Parker explained when defendant was arrested, she called the precinct to find out information about her son and later received a call back from Detective James, who she knew on a social basis through her cousin.

A few days after their call, Parker went to the precinct to discuss her son's case. According to Parker, she waited outside by her car and after Detective James came outside, they "talked for about twenty-five minutes about [her] son[']s case and about things he could do to help [her] son which was in the nature of a favor for a favor." Parker understood that to mean "that we would

have sex and he would help my son get off this case because he was handling the case."

Thereafter, Parker returned to the precinct "to have sex with Detective James as we had agreed." She said they met on the second or third floor of the precinct, and James showed her the paperwork about her son's case, including pictures of her "son's line-up." He then walked her "to the back room" to have sex, but the two did not consummate the agreement because he did not have a condom. She said that after that, they agreed to contact each other in a few days.

Although Parker stated that they contacted each other through text, and "exchanged several nude photos," they did not "go through" with their agreement. Defendant's father, who was divorced from Parker but still lived in the same home, discovered the text messages and was angry. He called the police department's Internal Affairs Division but was "persuaded" by Parker's cousin not to proceed with a complaint because it would not help defendant. According to Parker, her cousin also convinced defendant's father not to report it because James would lose his job.

Parker also certified that she told defendant's trial counsel about the situation with Detective James, but trial counsel did not use the information. Parker believed that the detective testified against her son because she did not

6

go through with their agreement and James was "getting back at [her] as well as [defendant's] father," because defendant's father contacted Internal Affairs.

Parker also explained that defendant was arrested in October 2014 on different charges, this time a weapons offense, and that defendant gave a statement in that case to Detective James. Parker told defendant's lawyer in that case about her agreement with the detective and she testified at a 2016 suppression hearing, which occurred after defendant's trial in this case, about the agreement. At that hearing, Parker read aloud an April 20, 2015 text between her and the detective. She said "[the message] says, [r]eason we didn't fuck at your job is because you didn't have any – any more condoms, mister. Oh, didn't forget to say that my husband caught our pictures and fucked everything up." She did not read any response from the detective.

In a recording of a telephone conversation between Parker and the detective played at the hearing, Parker explained to James that she saw the situation as "you really went hard on my son because of what his dad did" and James replied, "Absolutely no . . . I coulda did things (indiscernible)." The motion to suppress his statement was denied.

On January 3, 2020, the PCR judge in this case held oral argument on defendant's petition. In his argument, PCR counsel acknowledged that the

arguments surrounding the prosecutor's comments and the photo array were rejected on direct appeal—but believed that if Parker's testimony and testimony from defendant's father had been included at trial, "it would have been a very different situation" and would have "cast a shadow over the integrity of the whole trial." He argued that Parker's testimony would have "perfectly" fit into trial because at trial the defense "impugned" the testimony of Detective James and in summations, the prosecutor "felt compelled to vouch for him."

Specifically, the prosecutor sarcastically suggested in summation that Detective James and the other investigators "woke up" and decided to frame defendant for the robbery even though the detective had never seen him before. PCR counsel also highlighted that the prosecutor represented in summation that the detective did not know defendant beforehand, but according to Parker's certification, Detective James met Parker at her cousin's party, and he knew the family.

On January 21, 2020, the PCR judge issued a written decision and order denying defendant's petition without an evidentiary hearing. The judge first held that defendant failed to demonstrate that counsel's performance was deficient "when measured by an objective standard of reasonableness" and failed to show that "but for counsel's deficiency, the outcome of the proceeding would have

been different." In reaching his decision, the PCR judge noted that defendant claimed trial counsel was ineffective by not introducing the information from Parker because it could have undermined the credibility of Detective James and the integrity of the entire investigation, including the photo arrays. Moreover, the PCR judge added that according to defendant, the value of Parker's testimony was highlighted by defendant's trial counsel in his other criminal case calling Parker as a witness at the suppression hearing for that matter.

In rejecting defendant's contention, the PCR judge explained that, while not dispositive, the mother's testimony about the alleged agreement had already been found incredible after she testified in 2015 in defendant's other weapons offense case. The judge concluded that "[t]rial counsel may reasonably have believed that a jury similarly may have found such conduct by Parker to render her testimony incredible" at defendant's trial in this case.[2]

The PCR judge continued and explained that, in any event, while Parker's testimony could have undermined Detective James' testimony, counsel may have had any number of "valid strategic reasons not to raise the issue at trial." Citing State v. Norman, 151 N.J. 5, 37 (1997), the judge explained that "[s]trong

---

[2] As defendant properly notes on appeal, the suppression hearing actually took place in February 2016, after defendant's trial in this action, so his trial counsel could not have relied upon the judge's finding in that case.

deference is given to trial counsel because the reasoning of trial counsel is typically unknowable in an application for PCR" and defendant had not established "a substantial enough reason to overcome the strong presumption of finding that trial counsel had acted within objectively reasonable professional standards."

The judge also concluded that in light of the other evidence of defendant's guilt, the failure to introduce Parker's testimony, even if the result of counsel's error, did not prejudice defendant. Quoting from Strickland v. Washington, 466 U.S. 668, 694 (1984), the judge explained that defendant had to demonstrate there was a "reasonable probability that [trial counsel's] deficiencies materially contributed to defendant's conviction. . . . A reasonable probability is a probability to undermine confidence in the outcome."

The PCR judge concluded that here the outcome would not have been different if Parker had been called as a witness because the other evidence of defendant's guilt was overwhelming and unrelated to Detective James' testimony. The judge described the other evidence to include the in-court identifications of defendant by one of the victims and another officer, confirmation by an officer that defendant came to the precinct with a friend to falsely report the carjacking of defendant's uncle's vehicle that defendant used

in the commission of the crime, a handgun recovered from the truck and the magazine matching the gun found, and photographs showing bruising on defendant's face that was consistent with one of the victim's testimony that he punched the man that robbed him in the face.

In light of this evidence, the PCR judge concluded "[t]he weight of all the evidence on the record was substantial even when giving [defendant] the benefit of discounting [Detective] James' testimony." As such, defendant failed to establish that trial counsel's failure to introduce Parker at trial "materially affected" the outcome of the trial. This appeal followed.

On appeal, defendant argues the following:

> POINT I
>
> THE COURT BELOW ERRED IN DENYING DEFENDANTS POST-CONVICTION RELIEF APPLICATION SINCE BOTH THE PROCEDURAL AND SUBSTANTIVE REQUIREMENTS WERE SATISFIED AND THE COURTS DECISION WAS BASED ON A SUBSTANTIAL FACTUAL ERROR.

Where, as here, the PCR judge has not conducted an evidentiary hearing, we review the judge's legal and factual determinations de novo. State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020). No deference is owed to the PCR judge's legal conclusions. State v. Harris, 181 N.J. 391, 421 (2004).

We begin our review by acknowledging that defendant correctly points out that the PCR judge incorrectly described the suppression hearing at which Parker testified to have been held before his trial in this matter. That hearing was in fact held after defendant's trial. But, as the PCR judge clearly stated, the fact that Parker was found to be not credible at the suppression hearing, which evidently the PCR judge also presided over, was "not dispositive" of defendant's petition. Contrary to defendant's assertion on appeal, the judge's error does not warrant a reversal as the judge's reasons for denying defendant's petition comported with the applicable legal principles.

"The standard for an ineffective assistance of counsel claim [(IAC)] is . . . the same under both the United States and New Jersey Constitutions." State v. Gideon, 244 N.J. 538, 550 (2021). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland, 466 U.S. at 694, and adopted in State v. Fritz, 105 N.J. 42 (1987). "First, the defendant must show that counsel's performance was deficient. . . . [And] [s]econd, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by

the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" State v. Arthur, 184 N.J. 307, 319 (2005) (quoting Strickland, 466 U.S. at 689).

An IAC claim based on counsel's failure to call a witness is subject to such deferential review and a court must recognize "[d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." Id. at 320. In making this decision, counsel must "consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment[,] . . . whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors." Id. at 320-21.

"[L]ike other aspects of trial representation, a defense attorney's decision concerning which witnesses to call to the stand is 'an art,' . . . and a court's review of such a decision should be 'highly deferential.'" Id. at 321 (citations omitted) (quoting Strickland, 466 U.S. at 689, 693); see also State v. Coruzzi, 189 N.J. Super. 273, 321 (App. Div. 1983) ("[T]he decision at trial as to what

testimony to present is clearly a matter of trial strategy which is entrusted to the sound discretion of competent trial counsel."). "Mere improvident strategy, bad tactics or mistake do not amount to [IAC] unless, taken as a whole, the trial was a mockery of justice." N.J. Div. of Youth & Fam. Servs. v. V.K., 236 N.J. Super. 243, 258 (App. Div. 1989) (quoting State v. Bonet, 132 N.J. Super. 186, 191 (App. Div. 1975)).

To meet the second prong, a defendant must show that counsel's errors created a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Strickland, 466 U.S. at 694. "Prejudice means 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Nash, 212 N.J. 518, 542 (2013) (quoting Strickland, 466 U.S. at 687). The prejudice prong is "far more difficult" and except in certain "egregious" circumstances, prejudice must be proven, not presumed. State v. Preciose, 129 N.J. 451, 463-64 (1992) (stating prejudice is more difficult to prove); Fritz, 105 N.J. at 61 ("[W]e determine that a conclusive presumption of prejudice is inappropriate except in cases exemplified by egregious shortcomings in the professional performance of counsel.").

"Under the prejudice prong, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694). "A 'reasonable probability' simply means a 'probability sufficient to undermine confidence in the outcome' of the proceeding." State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 694). When determining whether a defendant has shown prejudice, the court should consider the strength of the State's evidence. See id. at 556; State v. Pierre, 223 N.J. 560, 583 (2015) ("Important to the prejudice analysis is the strength of the evidence that was before the fact-finder at trial.").

Applying these guiding principles here, we agree with the PCR judge that not only did defendant not establish that his trial counsel's performance was defective, but even if he did demonstrate that trial counsel's failure to call Parker as a witness was a deficiency in trial counsel's performance, the failure to do so was not prejudicial. The other evidence of defendant's guilt was indeed overwhelming and unrelated to Detective James. For that reason, defendant failed to satisfy Strickland's second prong. As defendant did not establish a

prima facie claim of IAC, an evidentiary hearing was not warranted.  State v.

Marshall, 148 N.J. 89, 158 (1997).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2379-19