138 N.J. Super. 595 (1976)
351 A.2d 795
THE CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, BY ALAN KLIGERMAN, A RESIDENT TAXPAYER OF THE CITY OF ATLANTIC CITY, PLAINTIFF,
v.
BOARD OF COMMISSIONERS OF THE CITY OF ATLANTIC CITY, JOSEPH F. BRADWAY, JR., MAYOR AND COMMISSIONER OF THE DEPARTMENT OF PUBLIC AFFAIRS; HORACE BRYANT, COMMISSIONER OF THE DEPARTMENT OF REVENUE AND FINANCE; MARIO FLORIANI, COMMISSIONER OF THE DEPARTMENT OF PUBLIC SAFETY; ROBERT E. QUIGLEY, FORMER COMMISSIONER OF THE DEPARTMENT OF PUBLIC WORKS; JOSEPH LAZAROW, COMMISSIONER OF THE DEPARTMENT OF PARKS AND PUBLIC PROPERTY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 5, 1976.
*596 Mr. Joseph T. Wilkins for plaintiff.
Mr. Murray Fredericks for defendants.
HORN, A.J.S.C.
Defendants have moved for an order to dismiss this action because the complaint fails to state a claim against them upon which relief can be granted, R. 4:6-2(e), or, in the alternative, for summary judgment, R. 4:46-2. Plaintiff has cross-motioned for summary judgment. The primary issue presented by the pleadings is whether the individual commissioners of Atlantic City are *597 being paid annual salaries in excess of those allowed by law. The secondary issue is whether they are required to reimburse the city for salaries taken in excess of the law if the first issue is decided in the affirmative.
The mayor and three of his fellow commissioners were elected in May 1972. The fifth commissioner, Quigley, was appointed to fill an unexpired term of his predecessor, who was elected in May 1972. Quigley resigned in early 1975.
The essential facts are not in dispute. Atlantic City is designated by N.J.S.A. 40:167-2 as a city of the fourth class. At all relevant times it operated under a commission form of government pursuant to the Commission Form of Government Law, N.J.S.A. 40:70-1 through 40:76-27.
Prior to 1929 the Commission Form of Government Law, as amended, provided that in fourth-class cities having from 40,000 to 90,000 population the mayor's annual salary should not be more than $4,800 and that of each commissioner not more than $3,500, N.J.S.A. 40:72-22(b), said salaries to be fixed by the board of commissioners, N.J.S.A. 40:72-23, 24. In 1929 § 24 was amended to authorize the commissioners to increase the salaries up to 50% of those authorized by N.J.S.A. 40:72-21 and 22. The maximum annual compensation under this statute was therefore increased to $7,200 for the mayor and $5,250 for each of the other commissioners, all subject to a referendum initiated by at least 15% of the electors. The commissioners accordingly increased their salaries to the authorized maximums without protest.
In 1953 the Legislature adopted N.J.S.A. 40:72-24.1a, which provided that in cities of the fourth class having a commission form of government and population of not less than 50,000 "the mayor's annual salary shall be $12,500.00 and that of each commissioner shall be $10,000.00."
By chapter 221 of the Laws of 1930, N.J.S.A. 40:72-25, it was enacted that:
*598 Upon the promulgation of a new national or state census whereby the population by reason of its increase or decrease shall require any municipality operating under chapters 70 to 76 of this title (§ 40:70-1, et seq.), to pay its mayor and commissioners a greater or less salary, as herein provided, then the board of commissioners of such municipality may pass ordinances increasing or decreasing the annual salaries of the mayor and commissioners to conform to the newly promulgated census. [Emphasis supplied]
In 1969 N.J.S.A. 40:72-24.1a was again amended. It now provides:
Notwithstanding any other provision of law, in cities of the fourth class now or hereafter having a population of not less than 50,000 and having the commission form of government under subtitle 4 of title 40 of the Revised Statutes the annual salary of each commissioner other than the mayor may be fixed by ordinance at not more than $22,000 and that of the mayor at $2,500 above that fixed for the other commissioners. The said salaries shall be payable in installments in the same manner as in the case of other officials of the municipality. [Emphasis supplied][1]
On December 4, 1969 the board of commissioners enacted Ordinance No. 38 of 1969, providing that the salaries of the mayor and board of commissioners should be $21,000 and $18,500, respectively.
According to the federal census of 1960 Atlantic City's population was slightly less than 60,000. The federal census of 1970 showed a decline in the city's population to 47,859. Also without dispute it appears that pursuant to N.J.S.A. 52:4-3 the federal census of 1970 became effective May 1, 1971.
Defendants rely upon the interpretations of N.J.S.A. 40:72-24.1a and N.J.S.A. 40:72-25 for authority to pay the present salaries  particularly with respect to the intended meaning of the word "now" in the former and the intended meaning of the word "may" in the latter.
*599 Defendants submit that, as used in N.J.S.A. 40:72-24.1a, the word "now" is to be construed as meaning when the statute was enacted in 1969 and therefore, notwithstanding a population decrease to less than 50,000, each included municipality was authorized to continue the payment of the salaries within the limitation of that statute.
The meaning of the word "now" has been discussed in a number of New Jersey cases. Chapman v. Holmes, etc., 10 N.J.L. 20 (Sup. Ct. 1828); Application of Marino, 23 N.J. Misc. 159, 42 A. 419 (Cty. Ct. 1945); Loboda v. Clark Tp., 40 N.J. 424 (1963). Loboda appears to be the most informative on this point. That case involved a township which had effected a change from commission to mayor-council form of government, pursuant to statute. Following the change the mayor and councilmen discharged a number of city employees. These contested their dismissals and claimed that under the Faulkner Act, N.J.S.A. 40:69A-207, they were protected by that part which provided: "now protected by any tenure of office law." There plaintiffs, as do defendants in the instant case, argued that the word "now" meant at the time when the law was adopted. Defendants contended that that word should be accorded an ambulatory meaning and encompass an in futuro application to the time when the act became effective in the municipality. The court adopted the defendants' construction, giving the word an ambulatory meaning.
It said, in connection with the interpretation of the statute:
Additionally, words alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. Palkoski v. Garcia, 19 N.J. 175, 181 (1955). The nature of the subject matter, the contextual setting, and statutes in pari materia must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. Isolated expressions cannot be invoked to defeat a reasonable construction. Giles v. Gassert, 23 N.J. 22, 33-34 (1956). [at 435]
*600 In addition to these rules of interpretation it has also been said that a court should assume that the Legislature intended a reasonable approach and that it should construe a statute to provide one if it can, Roman v. Sharper, 53 N.J. 338 (1969); that the Legislature is presumed to act with good reason and discretion, Restaurant Enterprises, Inc. v. Sussex Mut. Ins. Co., 52 N.J. 73 (1968), and statutes are to be read sensibly rather than literally, Schierstead v. Brigantine, 29 N.J. 220 (1959).
In the case at bar a reading of the applicable statutes in their relation to each other indicates that the Legislature intended to tack the salaries to the increase or decrease in population as reported by the federal census. Reading N.J.S.A. 40:72-24.1a with N.J.S.A. 40:72-25 evidences such intention. No beneficial purpose is perceived in an interpretation of a legislative mandate to authorize the continuance of salaries of a governing body based on a higher population merely because at one time a municipal body was authorized to pay such salaries.
Rather should that language be interpreted to mean that whenever the population of an applicable city is 50,000 or more it is authorized to fix the salaries pursuant thereto, but when it falls below that figure of 50,000 the statute is no longer applicable and there is no longer that authorization.
The word "now" must be interpreted to mean that the population must at all times according to the federal census be 50,000 or more; otherwise the authorization of that statute is withdrawn and the other provisions of law are effective.
The phrase "now or hereafter having a population" more logically should be interpreted to mean during such time as they have such population. To hold otherwise would ascribe to the Legislature an intention which is not realistic, i.e., to perpetuate salaries authorized for one population status regardless of how much it may decline. This is *601 especially so when read with N.J.S.A. 40:72-25, for the reasons which follow.
With respect to N.J.S.A. 40:72-25 defendants urge that that portion of the statute stating that a municipality "may pass ordinances increasing or decreasing the annual salaries to conform to the newly promulgated census" indicates that discretion is given to the governing body to retain the salaries authorized for such municipalities having a population in excess of 50,000.
Courts have had frequent occasions to interpret the intention of the Legislature with respect to the words "may" and "shall." The general rule is, of course, that the word "may" should be construed as permissive in the absence of any other statutory indications to the contrary. Leeds v. Harrison, 9 N.J. 202 (1952). The word "shall" ordinarily indicates that what is commanded must be done. However, such interpretation is by no means conclusive and may be overcome. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166 (1954); Swiney v. Dept. of Treasury, Div. of Pensions, 84 N.J. Super. 186, 192 (App. Div. 1964).
As stated in Diodato v. Camden Cty. Park Comm'n, 136 N.J. Super. 324, 327 (App. Div. 1975), "A determination of whether a particular statute is imperative or directory may be reached only after a consideration of the entire statute and of the objects sought to be accomplished by it." Cf. Paramus v. Block 1527, etc., Ridgewood Park Estates, 42 N.J. Super. 369, 375 (App. Div. 1956).
The key phrase in N.J.S.A. 40:72-25 which supplies the legislative intent is "whereby the population by reason of its increase or decrease shall require." (Emphasis supplied). My interpretation of this statute discloses an intention that governing bodies were required to adopt ordinances increasing salaries if authorized by the new census where the law required such increases and to decrease where the law required such decreases. N.J.S.A. 40:72-25 is and was of universal application with respect to all cities having the specified characteristics, and was not applicable just to *602 cities having populations of 50,000 or more. It applied to N.J.S.A. 40:72-24.1 (before amendment L. 1971, c. 21) and to 40:72-24.1a (before amendment L. 1969, c. 214), which provided for fixed salaries rather than discretionary salaries set by the governing body within the statutory limits (the same statutes as amended).
The word "may" was used because it was more appropriate to the scope of the statute. Notwithstanding the authorization to a governing body to increase salaries by reason of population increase, it was recognized that some governing bodies might not do so; thus, they were authorized, but not required, to increase. But the word "required" is not a pivotal word, as is "may" or "shall." It implies command  positive action. Read in this context and background, it was no error on the part of the Legislature  it was in fact a word which expressed the universality that was intended.
Conceivably, certain municipalities authorized under the 1969 amendment of N.J.S.A. 40:72-24.1a to increase salaries may not have done so. The Legislature recognized that and expressed its recognition by the use of the more flexible word "may" in N.J.S.A. 40:72-25. It did not have to amend the latter statute because its intent to require the increase or reduction of salaries was already adequately expressed. On the other hand it is hardly likely that the Legislature would have authorized a municipality which failed to increase salaries to the limits authorized by N.J.S.A. 40:72-24.1a when its population exceeded 50,000 to do so after its population decreased to below that figure. Yet, if defendants' contentions are valid, it would lead to such absurd result.
Nor would it be considered sound to interpret the legislative intent to permit such salaries in a municipality whose population was reduced for any reason substantially below 50,000.
The Legislature, in creating a classification of cities of the fourth class, recognized a great difference in the problems of operating such cities from those of others. It recognized *603 that these were resort cities with great population fluctuations creating greater problems than other municipalities. Consequently, it treated such cities differently with respect to salaries of the governing bodies. Thus, for example, under N.J.S.A. 40:72-21, with respect to cities other than fourth class having a population from 40,000 to 90,000, the mayor's salary is not to exceed $2,500 and that of each commissioner $2,000. As already noted, in fourth-class cities the mayor's salary was not to exceed $4,800 and that of each commissioner $3,500, and under N.J.S.A. 40:72-24.1 in cities of the fourth class there was a further authorization to increase the salaries an additional 50%.
For the foregoing reasons, I conclude that it was incumbent upon defendants to decrease the respective salaries to the authorized level pursuant to the 1970 Federal census. Under the applicable statutes, N.J.S.A. 40:72-22 and N.J.S.A. 40:72-24, the maximum salaries permitted are $7,200 for the mayor and $5,250 for each commissioner.
Other arguments made by counsel for the parties (pertaining to the wisdom of requiring such reductions and the financial circumstances of the present commissioners) are not properly before me. Only the Legislature is empowered to determine salary limitations. Only it may consider the wisdom and feasibility of its enactments.
The parties have neither briefed nor argued the question of whether the individual commissioners are obliged to reimburse the city. Upon application I will give counsel an opportunity to be heard on the matter and to submit briefs, if desired, but this shall be done within 30 days.
NOTES
[1] This statute amended L. 1968, c. 236, § 2 (effective July 31, 1968) which limited salaries in such municipalities to $15,000 for the mayor and $12,500 for commissioners.