866 A.2d 1048

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF–RESPONDENT, v. D.M.B. AND T.B.L., DEFENDANTS–APPELLANTS.

IN THE MATTER OF THE GUARDIANSHIP OF K.A.B., B.K.B.L., AND M.A.L.

Superior Court of New Jersey
Appellate Division

Submitted November 16, 2004—Decided February 15, 2005.

Before Judges KESTIN, LEFELT and FALCONE.

*Yvonne Smith Segars*, Public Defender, attorney for appellant D.M.B. in A–5075–03 (*Mark Tabakman*, Designated Counsel, of counsel and on the brief).

*Yvonne Smith Segars*, Public Defender, attorney for appellant T.B.L. in A–5361–03T4 (*Adubato & Jaffe*, attorneys; *Michele A. Adubato*, Designated Counsel, on the brief).

*Peter C. Harvey*, Attorney General, attorney for respondent Division of Youth and Family Services (*Michael J. Haas*, Assistant Attorney General, of counsel; *Mara Spiegeland*, Deputy Attorney General, on the brief).

*Yvonne Smith Segars*, Public Defender, law guardian for K.A.B., B.K.B.L. and M.A.L. (*Lisa C. Castaneda*, Assistant Public Defender, on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

In these consolidated matters, D.M.B. and T.B.L., the mother and father, respectively, of three children, K.A.B. (born on March 10, 2001), B.K.B.L. (born on August 2, 2002), and M.A.L. (born on December 2, 2003), appeal from a judgment terminating their parental rights to all three children and awarding guardianship, care and control of the children to the Division of Youth and Family Services (DYFS). We affirm.

Both appellants argue that the trial court's decision to terminate their respective parental rights was not adequately supported by clear and convincing evidence. A four-part standard embodied both in statute, *N.J.S.A.* 30:4C–15.1a, and in case law, *see, e.g., Division of Youth & Family Servs. v. A.W.*, 103 *N.J.* 591, 604–611,

512 *A*.2d 438, 445–49 (1986), establishes the grounds for terminating parental rights.

We have analyzed the record in the light of the arguments advanced by the parties and prevailing principles of law. In reviewing the factual findings and conclusions of a trial judge, we are obliged to accord deference to the trial court's credibility determinations and the judge's "feel of the case" based upon his or her opportunity to see and hear the witnesses. *Cesare v. Cesare,* 154 *N.J.* 394, 411–13, 713 *A*.2d 390, 398–400 (1998). *See Division of Youth and Family Servs. v. A.G.,* 344 *N.J.Super.* 418, 442–43, 782 *A*.2d 458, 473 (App.Div.2001); *Division of Youth & Family Servs. v. V.K.,* 236 *N.J.Super.* 243, 254, 565 *A*.2d 706, 711 (App.Div. 1989), *certif. denied,* 121 *N.J.* 614, 583 *A*.2d 315, *cert. denied sub nom. Kliewer v. New Jersey,* 495 *U.S.* 934, 110 *S.Ct.* 2178, 109 *L.Ed.*2d 507 (1990); *see also In re Guardianship of J.C.,* 129 *N.J.* 1, 17–18, 608 *A*.2d 1312, 1319–20 (1992) (holding that record did not support a clear and convincing finding). We are not to disturb the judge's findings of fact unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." *Cesare, supra,* 154 *N.J.* at 412, 713 *A*.2d at 399 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 484, 323 *A*.2d 495, 500 (1974)); *see also In re Guardianship of S.C.,* 246 *N.J.Super.* 414, 418, 587 *A*.2d 1299, 1301–02 (App.Div.), *certif. denied,* 126 *N.J.* 334, 598 *A*.2d 891 (1991), *appeal after remand,* 260 *N.J.Super.* 304, 616 *A*.2d 924 (App.Div.1992). And, the conclusions flowing logically from those findings of fact are, likewise, entitled to deferential consideration on appellate review. *See Cesare, supra,* 154 *N.J.* at 412, 713 *A*.2d at 399; *Rova Farms, supra,* 65 *N.J.* at 484, 323 *A*.2d at 500.

Judge Johnson's comprehensive written opinion in the matter deals analytically and reflectively with the evidence in the record as it bears separately on each appellant's parenting capacities. His findings of fact and the conclusions they generated are well supported by the evidence and are, therefore, binding on appeal.

The judge's legal analyses regarding the parents' rights and his application of the four-part test to each of them are also free from error of any consequence. Given the factual record developed, we are in substantial agreement with the legal conclusions Judge Johnson reached. Accordingly, we determine that the termination judgment resulting from these findings, conclusions and legal analysis must be affirmed.

■ In addition to his argument regarding the four-part test, T.B.L. contends that the trial court erred in not accepting his "identified surrender of his parental rights." As the trial in the matter began, T.B.L. proffered an "identified surrender" of his parental rights so that the foster parents could adopt his children. Given the limited nature of an identified surrender, DYFS urged rejection of the proffer on the basis that it was not in the best interests of the children to restrict their availabilities for adoption.

The trial court accepted the identified surrender, but proceeded with the termination proofs. Judge Johnson explained this ruling in his written decision at the close of the case.

> At the time of trial, [T.B.L.] offered to make an "identified surrender" as to the children to their current caretakers. The court notes that those caretakers are Division approved foster caregivers and their identities are unknown to [T.B.L.] The court accepted [T.B.L.'s] "identified surrender," after finding that the same was voluntary, not coerced, made without [T.B.L.] being under the influence of drugs or alcohol, and with a full understanding of what he was doing after full and open consultation and receipt of legal advice from his lawyer. The court also found that there were no promises being made to him in exchange for the surrender.

> In practice, an "identified surrender" means that those exact person(s) as to whom the surrender is made shall adopt the children. If for some reason the "identified" persons are not able to adopt the child, the surrender becomes "void" and the parental rights of surrendering parent(s) are reinstated. *See N.J.S.A.* 9:3–38(j); *N.J.S.A.* 9:3–41; *N.J.S.A.* 30:4C–23.

> Subsequent to this voluntary surrender, [T.B.L.] sought to withdraw from the termination case. He argued that the Division no longer needed to proceed against him as to the termination of his parental rights under *N.J.S.A.* 30:4C–15.1, because he had surrendered all of his rights as to these children by way of his "identified surrender."

> The Division took the position that [it] wished to proceed against [T.B.L.] under *N.J.S.A.* 30:4C–15.1 regardless of his voluntary surrender.

[T.B.L.], after being advised of the fact the Division wished to continue to proceed against him under *N.J.S.A.* 39:4C–15.1, and the ramifications that would occur if the Division was successful against him under said statute, continued to request to withdraw from the proceeding. The court allowed [T.B.L.] to withdraw from the courtroom, but required that his legal counsel remain to defend his rights in regard to the termination action. Each day of the trial, [T.B.L.], who was incarcerated, was brought to the court and offered the opportunity to remain and participate in the proceeding, but he declined to do so.

This court must determine if it was appropriate for the Division to proceed against [T.B.L.] despite the fact that he had agreed to an identified surrender. If, faced with a termination of [ ] parental rights by action under *N.J.S.A.* 30:4C–15.1(a), a parent volunteers and the court accepts an "identified surrender" from [him or her], does that make the termination case moot?

*N.J.S.A.* 9:3–38(j) defines "surrender" in this context. It reads that "Surrender means a voluntary relinquishment of all parental rights by a birth parent, previous adoptive parent, or other person or agency authorized to exercise these rights by law, court order or otherwise, for the purposes of allowing a child to be adopted." *N.J.S.A.* 9:3–41 authorizes an "identified surrender" stating that "At the request of a parent of a child, an approved agency authorized to receive surrenders, may receive that parent's surrender of his child for purposes of having the child adopted by a person specified by the surrendering parent." The New Jersey Division of Youth and Family Services, as a division of the New Jersey Department of Human Services, is such an approved agency. *See N.J.S.A.* 9:3–38(a).

*N.J.S.A.* 30:4C–23 also deals with voluntary surrenders, releases of custody and consents to adoption. This statute allows that the Division, after due investigation and consideration, may, in cases where it would be to the permanent advantage of the child, take voluntary surrenders, releases of custody and consents to adoption from the parent, parents, guardians or other persons or agencies having the right or authority to give such surrenders, releases or consents. *See N.J.S.A.* 30:4C–23. A surrender under this statute is stated to be valid and binding regardless of the age of the person giving the same and shall be irrevocable except at the discretion of the Division or a court of competent jurisdiction.

The court notes that a termination of parental rights as per *N.J.S.A.* 30:4C–15.1 does create certain significant ramifications that would not exist if the Division was required to accept a voluntary "identified surrender" of a child.

First, a termination creates finality to the action not present with a voluntary identified surrender. If the Division is successful, the parent's rights as to the child are absolutely terminated forever. In an identified surrender, the parent's rights could be automatically reinstated if an event occurs that causes the person(s) to whom the surrender was made to be unable to complete the adoption. Many scenarios exist that could stop or otherwise prevent an adoption from occurring. A criminal event could disqualify a prospective adoptive parent, an unexpected or untimely death or accident could occur to the identified adoptive parent(s), or a simple change of heart or mind could cause an adoption to not occur. This would reinstate the parental rights of a surrendering parent.

Secondly, if the Division successfully terminates the rights of a parent, future ramifications arise from the same. *N.J.S.A.* 30:4C–11.3(c) states that the Division shall not be required to provide reasonable efforts to reunify a removed child with a parent if a court of competent jurisdiction has determined that "the rights of the parent to another of the parent's children have been involuntarily terminated."

*N.J.S.A.* 30:4C–11.1 requires that in a case where children have been removed from a parent, the Division must provide reasonable efforts to reunify the child with [its] parent(s). Also, a significant part of the four-part termination of parental rights requirements of *N.J.S.A.* 30:4C–15.1 is that the Division must show that [it has] "made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside of the home...." *See N.J.S.A.* 30:4C–15.1(a)(3). Thereafter, the statute relates back to *N.J.S.A.* 30:4C–11.3 and states that reasonable efforts are not required to be exercised by the Division if there has been a prior termination of parental rights as to the parents. *See N.J.S.A.* 30:4C–15.1(d).

Accordingly, requiring the Division to accept the "identified surrender" and to not proceed as to the termination case would prevent the "finality" of a termination and would have possible future ramifications, by eliminating the Division's opportunity to obtain the ability to not offer reunification services to a parent in the future. In theory, a hopelessly inappropriate or dangerous parent could continually avoid the statutory ramifications of a termination by doing a "voluntary surrender" in each instance, and thereafter seek services from the Division as to any additional children, regardless of the number of children....

The court does not believe that to be the intention of the statute. The court turns to the New Jersey Legislature's choice of one word in the statutes to support this conclusion. Both *N.J.S.A.* 9:3–41(d) and *N.J.S.A.* 30:4C–23 state that under the circumstances stated therein, the Division *"may"* receive the parent's or guardian's surrender of the child(ren) for purposes stated in the statute ([emphasis] added). The court notes that the word "may" provides discretion as opposed to "shall," which requires an action be done. *See N.J.S.A.* 1:1–1; *See also Seiple v. Borough of Elizabeth,* 27 *N.J.L.* 407 (Sup.Ct.1859); *Evans v. Prudential Property and Casualty Ins. Co.,* 233 *N.J.Super.* 652, 559 A.2d 888 (Law Div.1989); *Atlantic City v. Board of Comm'rs of Atlantic City,* 138 *N.J.Super.* 595, 351 A.2d 795 (Law Div.1976).

✻ ↘ ✕

The Division has the option to accept the "identified surrender" should [it] choose to do so, but [it] also [has] the right to proceed as to the termination case. *N.J.S.A.* 30:4C–15.1 states that the Division "shall initiate a petition to terminate parental rights on the grounds of best interests of the child" as per *N.J.S.A.* 30:4C–15 if the four-part test of *N.J.S.A.* 30:4C–15.1 can be met. Here, the Division has determined to proceed to terminate the parental rights as to [T.B.L.] regardless of the "identified surrender" he has offered. The court finds it would not be appropriate to require that the Division accept this surrender as an end to this case if [it wishes] to proceed on the termination. The request by [T.B.L.] to not allow the Division to proceed against him as to termination because of his "identified surrender" as to his children is denied.

We endorse the procedures Judge Johnson employed in dealing with T.B.L.'s identified surrender. We are, also, substantially in agreement with his capably considered, well-reasoned, and finely articulated rationale regarding the rights of the parties where an identified surrender has occurred. The determination whether or not to proceed with plenary consideration of a parental termination case after an identified surrender has been made is, as a matter of law, discretionary with the trial court. T.B.L. has provided us with no factual basis from which we might discern that that discretionary authority was misapplied here.

Affirmed.