**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-1871-16T2
A-1872-16T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

P.O. and M.C.D.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.D.C.-O.
and J.E.C.-O., Minors.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **October 30, 2018** |
| **APPELLATE DIVISION** |

Argued October 3, 2018 - Decided October 30, 2018

Before Judges Koblitz, Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FG-15-0017-13.

James P. Gentile, Designated Counsel, argued the cause for appellant P.O. (Joseph E. Krakora, Public Defender, attorney; James P. Gentile, on the brief).

Laura Orriols, Designated Counsel, argued the cause for appellant M.C.D. (Joseph E. Krakora, Public Defender, attorney; Laura Orriols, on the briefs).

Salima E. Burke, Deputy Attorney General, argued the cause for respondent (Gubrir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Salima E. Burke, on the brief).

Keri L. Popkin, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meridith A. Pollock, Deputy Public Defender, of counsel; Andrea N. Petrou, Assistant Deputy Public Defender, and Keri L. Popkin, of counsel and on the brief).

The opinion of the court was delivered by

KOBLITZ, P.J.A.D.

Defendants P.O. (Paula)[1] and M.C.D. (Martin) appeal from the December 22, 2016 judgment terminating their parental rights to their two children M.D.C.-O. (Manuel), now fourteen years old, and J.E.C.-O. (Juan), now nine years old. Defendants have a history with the New Jersey Division of Child Protection and Permanency (Division) that stems back to 2007, and includes substantiated instances of physical abuse, inadequate supervision, neglect, and child endangerment. In March 2012, the children were moved to

---

[1] We use initials and pseudonyms to identify the parties to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

a resource home, where they have remained to date. This family wishes to adopt the two boys, and the children also desire to be adopted into this family.

Defendants argue on appeal that the trial court erred in finding the Division proved its case by clear and convincing evidence, and that their due process rights were violated by the lack of notice and recorded proceedings for many of the hearings, especially when their identified surrender was vacated. We affirm the termination of parental rights for both defendants, substantially for the reasons expressed on the record by the trial court. We emphasize, however, the need to record all matters in child protective services litigation resulting in an order, even when the parties present consent to the order. Also, biological parents should be given notice when the Division seeks to vacate an identified surrender.

Paula and Martin moved to the United States from Peru in 2003; their immigration status was undocumented, and they spoke only Spanish. Their son Manuel was born in 2004. In September 2007, the Division received a referral alleging that Martin physically abused Manuel. Paula reported that Martin physically abused her as well. The Division placed Paula and Manuel at Providence House, a shelter for domestic violence victims, where staff noted

3

that Paula exhibited cognitive limitations. Paula was institutionalized for mental health issues.

The Division was granted custody of Manuel and placed him in a resource home. The Division offered services in Spanish to both defendants, including batterers and anger management counseling, parenting classes, supervised visitation and individual counseling.

After fifteen months in placement, Manuel was reunited with defendants in February 2009, the year Juan was born. The Division substantiated allegations of inadequate supervision of Juan in 2010. The children remained in the home and the Division continued to provide services, including financial assistance, clothing, beds for the children, baby supplies, transportation, and a home-care aide. The Division closed the family's case in December 2010.

On October 26, 2011, Juan, then two years old, was found walking across the street unsupervised, and was nearly hit by several vehicles. Martin told the Division that he had left the two children unsupervised because he believed his wife would be home soon. Paula told police and the caseworker that she had been out overnight, she knew Martin usually went to work at 5:00 a.m. and she did not get home until 9:30 a.m. Manuel, then barely seven years old, stated that he put himself on the bus to school that morning. He was alone

when he woke up and left his mother a note that read "mommy please come home for my brother." Manuel "arrived [at] school upset," asking for help because "he left his little brother at home crying" and "his parents were not home." The Division conducted an emergency removal of the children from the home.

The Division arranged supervised weekly visits between defendants and the children. Between December 2011 and July 2012, Paula missed nine visits; Martin missed four. In November 2011, after an evaluation, individual and group psychotherapy were recommended for Paula.

Between January and April 2012, Paula attended parenting group meetings, where staff noted that her limited cognitive abilities inhibited her participation. In February 2012, the Division arranged for a psychiatric evaluation of Paula, which resulted in a recommendation that she receive psychological therapy, medication, and medication monitoring. Paula did not schedule an appointment for these Division services, and thus did not receive a prescription for psychotropic medication. In May 2012, the court ordered a cognitive evaluation of Paula, which she failed to attend.

The Division provided Martin with individual and anger management counseling. The Division also provided both defendants with family team

meetings and transportation assistance. Therapeutic visitation began in May 2012. Paula missed two of the four therapeutic visitation sessions, and Martin missed one.

In July 2012, Paula and Martin were arrested for second-degree child endangerment, N.J.S.A. 2C:24-4(a), stemming from the October 26, 2011 incident. Martin pled guilty to two counts of cruelty and neglect of children under N.J.S.A. 9:6-3 in December 2012. Paula's charges were downgraded to disorderly conduct; she pled guilty in May 2013, and was sentenced to time served.

Martin suggested three relatives as potential resource placements, but all were ruled out by the Division.[2] Defendants identified the Rivas family as another potential placement.

Immigration and Customs Enforcement (ICE) transferred Martin to the Essex County Jail in February 2013, and moved Paula there in May 2013. In

---

[2] Martin's aunt in Peru was eliminated because a home study could not be completed. Pursuant to the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption, the home study would have to be initiated by the Department of State, and only after defendants' parental rights were terminated. See Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption art. 4(a), 14, May 29, 1993, 32 I.L.M. 1134.

October 2013, Martin was removed[3] and prohibited from entering, attempting to enter, or being in the United States for a period of twenty years. Three months later, Paula was removed and prohibited from returning for ten years.

In December 2013, defendants, present by telephone with an interpreter in the courtroom, and represented by counsel, entered into identified voluntary surrenders of their parental rights to the Rivas family.[4] Paula confirmed she understood that "in the event [Mrs. and Mr. Rivas] do not adopt your children your parental rights will be reinstated and that litigation as to you will be reopened[.]" Martin acknowledged his understanding that "his parental rights could be reinstated . . . if [the Rivas family] decided not to adopt or were for some reason unable to adopt."

Visits between the Rivas family and the children had been instituted the month before the voluntary surrender. In October 2014, ten months after the surrender, and after bonding evaluations, the trial court ruled against moving the children to the Rivas family. The court vacated the surrender, reinstated defendants' parental rights, and reopened the guardianship litigation.

---

[3] See Padilla v. Kentucky, 559 U.S. 356, 364 n.6 (2010) ("The changes to our immigration law have also involved a change in nomenclature; the statutory text now uses the term 'removal' rather than 'deportation.'").

[4] Paula was located in the Essex County Jail and Martin in Peru.

A-1871-16T2

In January 2015, the Division called Martin, who remained in Peru. The Division discussed with Martin the services he would need for reunification. The Division requested services through International Social Services (ISS), which works with the Division to provide services to parents located outside of the country. ISS provided Martin with the order vacating the surrender of parental rights and a new application for legal representation. The Division made referrals to ISS for services for Martin including a psychological evaluation, a substance abuse evaluation, parenting classes, and counseling. The Division caseworker who testified at trial confirmed that these services were provided, based on reports she received from her counterpart in Peru. The Division could not offer these services to Paula because both the Division and ISS had no way to contact her after she left the United States.

In January 2016, the Division arranged for psychological and bonding evaluations, which revealed that the children share a "very close, supportive, positive bond" with the resource family. Based on the advice of psychologist Elise C. Landry, Ph.D., the Division arranged for Manuel to attend cognitive behavioral therapy (CBT); he also resumed in-home counseling. The resource family resisted engaging Manuel in CBT, but eventually complied under court order.

8

In November 2016, a Division caseworker contacted Paula inadvertently when calling Martin. Paula answered the phone, and indicated that she had moved back in with Martin. Paula stated she was aware the Rivas family did not adopt the children. She did not contact the Division further.

Several witnesses testified that neither child speaks Spanish. Although the Division placed the children in a Spanish-speaking resource home in 2012, they do not speak Spanish in the home. Manuel has been diagnosed with a language disorder. He would have particular difficulty learning to speak Spanish, which would be necessary if he were returned to Peru.

In his comprehensive opinion, the trial court found the Division had proven all four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a), and that termination of defendants' parental rights was in the children's best interests. On this appeal, our review of the trial court's decision is limited. We defer to his expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and we are bound by his factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007). After reviewing the record, we conclude that the court's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable.

A-1871-16T2

The identified surrender order stated that bonding evaluations would be performed and that defendants would be notified on a quarterly basis of the status of the adoption, as long as they notified the Division of their current address. Paula failed to keep in touch with the Division. Although Martin attended the surrender hearing by telephone approximately one month after he returned to Peru, a caseworker testified that the Division was unable to obtain Martin's address or phone number after he was removed until January 2015, after the surrender was vacated and the court ordered the Rivas family to provide Martin's address and phone number. Subsequently, the Division and ISS were able to locate Martin, although he often did not respond to phone calls because he was at work.

At the time of the termination trial, defendants, who were represented by assigned counsel, participated telephonically from Peru, where they lived together. Defendants did not complain that they had not been notified of the pending vacation of their identified surrender, nor did they complain of not receiving quarterly updates.

On appeal, they argue that their procedural due process rights were violated because they did not receive notice of the pending dissolution of the identified surrender and because many of the hearings that resulted in orders

10

issued that took place before their termination trial were not on the record. Although these arguments were not brought before the trial court, we consider them nonetheless because there was little the termination trial court could have done to remedy the situation had it been raised timely, and the issues raise important legal questions of "public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

A "surrender" is the "voluntary relinquishment of all parental rights . . . for purposes of allowing a child to be adopted . . . ." N.J.S.A. 9:3-38(j). In a general surrender the parents give up their rights and are not entitled to notice regarding further proceedings. N.J.S.A. 9:3-45 (b)(1), (2). In an "identified surrender," as occurred here, the "person(s) as to whom the surrender is made shall adopt the children. If for some reason the 'identified' persons are not able to adopt the child, the surrender becomes 'void' and the parental rights of surrendering parent(s) are reinstated." N.J. Div. of Youth and Family Services v. D.M.B., 375 N.J. Super. 141, 145 (App. Div. 2005); see N.J.S.A. 9:3-38(j); N.J.S.A. 9:3-41; N.J.S.A. 30:4C-23.

Defendants argue, and we agree, that they should have been notified before the identified surrender judgement was vacated. See R. 4:50-1. In fact,

the court ordered the Division to give defendants regular updates on the progress of the adoption proceeding. Where a court holds a hearing regarding placement pursuant to a voluntary agreement, "[t]he court shall provide written notice . . . to the parents or legal guardian of the child, the child or the child's counsel, the child's temporary caretaker, the division, and any other party the court deems appropriate." N.J.S.A. 30:4C-54 (emphasis added).

The Division argues that it was the legal guardian after the identified surrender, and therefore defendants did not have to be given notice. Because the surrender was conditional in nature, we disagree with this interpretation of the statute. Unfortunately, defendants did not notify the Division of their address, as directed by the surrender order, although Martin did keep in telephone contact with the Rivas family. The Division should have sought a court order earlier, to obtain Martin's contact information through the Rivas family, in order to give him notice and the promised quarterly updates.

Most importantly, every proceeding should have been placed on the record. The fact that the parties present were in agreement with the provisions of the orders entered is insufficient for appellate review and insufficient when defendants, who were not present, were deeply affected by the orders. All Children in Court (CIC) proceedings resulting in an order should occur on the

12

record.  Rule 1:2-2 requires all court proceedings to be recorded, with few exceptions.  "[A]ll proceedings in court shall be recorded verbatim except, unless the court otherwise orders, settlement conferences, case management conferences, calendar calls, and ex parte motions."  R. 1:2-2.  CIC proceedings resulting in an order should not take place in chambers unless recorded, and should not be viewed as "settlement conferences" or "case management conferences."  This is especially true when the parents, who have not unconditionally abandoned their rights, are not parties to the proceedings.

The lack of notice or a court record is not fatal to the determination here.  Defendants' rights were restored, and they were parties to a full trial on the merits.  After seven years of separation from their biological parents, these two boys are entitled to a permanent home.  The experts have unanimously recommended adoption by the resource parents, and the trial court carefully considered the proofs and arguments of all counsel and rendered a considered decision based on the evidence submitted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13