# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1720-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.M.P.,

     Defendant-Appellant,

and

F.R.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.N.R.,

     a Minor.

_____

Submitted December 3, 2019 – Decided December 19, 2019

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0167-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth Ann Harrigan, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Laura Ann Dwyer, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Rachel E. Seidman, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

K.M.P. (Karen) appeals from a judgment terminating her parental rights to her daughter J.N.R. (Judy), and granting the Division of Child Protection and Permanency (Division) guardianship of Judy, with the plan that the child be adopted.[1] Karen argues that the Division failed to prove the four prongs of the best-interests standard necessary for the termination of parental rights. N.J.S.A. 30:4C-15.1(a). The Division urges that we affirm the judgment and allow the adoption to proceed. Having reviewed the record in light of the parties' contentions and applicable law, we affirm substantially for the reasons explained

---

[1] We use initials and fictitious names for the parents and child to protect their privacy and the confidentiality of the record. See R. 1:38-3(d)(12).

by Judge Francine I. Axelrad in her comprehensive opinion read into the record on November 28, 2018.

The facts and evidence are detailed in Judge Axelrad's opinion, which she rendered after a three-day trial. Accordingly, we only summarize some of the facts.

Karen and F.R. (Fred) are the biological parents of Judy, who was born in August 2014. Fred is no longer in a relationship with Karen and he voluntarily surrendered his parental rights to Judy.

At the time of the guardianship trial, Karen was in a relationship with V.M. (Vincent) and she and Vincent had one child together, M.M. (Mark), who was born in May 2018. Mark is in the custody of the Division, but he was not the subject of this guardianship matter.

The Division became increasingly concerned about the safety of Judy when she sustained several suspicious injuries, including bruises and subdural hematomas. Suspecting that Vincent might be physically abusing Judy, the Division implemented a safety protection plan under which Vincent and two other individuals, who are not parties to this case, could not care for Judy or be with her when they were not supervised.

In December 2016, the Division removed Judy from Karen's care when Judy was observed to have a bruise under her eye and Karen refused to promptly take Judy to the hospital that had treated Judy's other injuries. Judy was placed with her maternal grandfather and step-grandmother and has been in their care for the past three years. They want to adopt Judy.

Following Judy's removal, Karen admitted that she had violated the safety protection plan by allowing Vincent to have unsupervised contact with Judy and she stipulated to a finding of abuse or neglect under N.J.S.A. 9:6-8.21(c)(2). The Division provided her with a series of services, which included psychological evaluations, therapy, counseling for parenting and domestic violence, and substance abuse evaluations. Her evaluators diagnosed Karen with parent-child relational problems, adjustment disorder, relationship problems, including a history of domestic violence by Fred, and other personality disorders. Her therapist noted that Karen had anger management issues and she lacked insights into her circumstances and the needs of Judy.

The guardianship trial was conducted in October and November 2018, and three witnesses testified: a Division worker, Dr. Linda Jeffrey, an expert called by the Division, and Karen. The Division also submitted numerous documents into evidence.

Judge Axelrad found the Division worker and Dr. Jeffrey credible, but found Karen largely incredible. Based on the testimony and exhibits, Judge Axelrad then found that the Division presented clear and convincing evidence of each of the four prongs necessary to terminate Karen's parental rights.

Evaluating prong one, Judge Axelrad found that Karen had not provided Judy with a safe and stable home and failed to protect Judy from repeated injuries. The judge also found that Karen failed to attend to Judy's medical needs and demonstrated a "lackadaisical" attitude towards Judy's safety and who provided care for Judy.

Turning to the second prong, Judge Axelrad found that Karen is unwilling and unable to eliminate the harm facing Judy. In that regard, Judge Axelrad relied on the unrebutted testimony of Dr. Jeffrey that Karen was not prepared to provide a minimum level of safe parenting and that Judy would be at risk of further harm in Karen's care. Moreover, the judge found that Karen consistently placed the needs of Vincent over the needs of Judy. Relying on reports of Karen's outbursts of anger and erratic conduct, Judge Axelrad also found that it was not likely that Karen would develop the skills to parent Judy in the foreseeable future.

A-1720-18T2

Addressing the third prong, Judge Axelrad found that the Division had provided Karen with a myriad of services, including individual counselling, therapeutic visits, housing assistance, and psychological evaluations. Karen, however, failed to fully avail herself of those services and her parenting abilities had not improved. Judge Axelrad also found that the Division had reviewed several potential family placements for Judy and had appropriately placed Judy with her maternal grandfather and step-grandmother.

Finally, as to the fourth prong, Judge Axelrad relied on the credible and unrebutted testimony of Dr. Jeffrey. Dr. Jeffrey had conducted psychological evaluations of both Karen and Vincent. The doctor had also conducted bonding evaluations of Karen and the maternal grandfather and step-grandmother. Judge Axelrad noted that Karen loved Judy and that they had a warm relationship. Judge Axelrad also found that Judy had a much stronger and more stable relationship with her maternal grandfather and step-grandmother and that Judy would suffer "greater harm" if her relationship with those caregivers was severed. Thus, the judge found that termination of Karen's parental rights would not do more harm than good.

Karen argues that Judge Axelrad erred in finding each of the four prongs under the best-interests standard. In particular, she challenges the third prong,

6

contending that the Division failed to provide services that were reasonable under all of the circumstances and it did not consider alternatives to termination of Karen's parental rights. We are not persuaded by any of those arguments.

Each of Judge Axelrad's findings concerning the four prongs is supported by substantial, credible evidence. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). In addition, Judge Axelrad correctly summarized the law and correctly applied the law to her factual findings. See N.J. Div. of Child Prot. & Permanency v. P.O., 456 N.J. Super. 399, 407 (App. Div. 2018). Judge Axelrad appropriately relied on the unrebutted testimony of Dr. Jeffrey who conducted a number of evaluations and had a factual basis for her opinions. In that regard, our Supreme Court has noted: "In a termination of parental rights trial, the evidence often takes the form of [expert testimony] by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018).

Finally, we note that Karen essentially argues that she should have been given more time and better services to allow her to develop the parenting skills necessary to reunite with Judy. Judge Axelrad was cognizant of Karen's rights. Judge Axelrad, however, appropriately balanced Karen's rights with Judy's need

for permanency. Judy had been removed from Karen's care when she was two years old. For over a year, the Division provided services to Karen in an effort to assist her to develop the parenting skills needed to safely care for Judy. The evidence at trial established that Karen did not fully avail herself of those services and placed her own needs and desire to continue a relationship with Vincent over the needs of Judy. Accordingly, Judge Axelrad struck the appropriate balance in terminating Karen's parental rights in the best interests of Judy and her need for permanency.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1720-18T2