# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4878-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.T.,

     Defendant-Appellant,

and

J.C.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF G.C.,

     a Minor.

_____

       Argued telephonically May 19, 2020 –
       Decided June 30, 2020

       Before Judges Fisher, Accurso, and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0220-19.

Ryan Thomas Clark, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Ryan Thomas Clark, on the briefs).

Sara M. Gregory, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Sara M. Gregory, on the brief).

Margo E. K. Hirsch, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo E. K. Hirsch, on the brief).

PER CURIAM

A mother, S.T. (Susan), appeals from an order terminating her parental rights to her son G.C. (Guy), and granting guardianship of the child to the Division of Child Protection and Permanency (Division) with the plan that Guy be adopted by his resource parents.[1]  The father's parental rights were also

---

[1]  We use initials and fictitious names to protect privacy interests and the confidentiality of the record.  See R. 1:38-3(d)(12).

terminated but he does not appeal from the judgment.[2]  Susan argues that the Division failed to establish the four prongs of the best interests standard under N.J.S.A. 30:4C-15.1(a).

The Division and the Law Guardian urge that we affirm and permit Guy to be adopted.  They argue that the family court correctly found all prongs had been established by clear and convincing evidence and that it is in Guy's best interest that he be adopted by the family that has cared for him for over two-and a-half years.  Having reviewed the parties' contentions and the applicable law, we affirm substantially for the reasons explained by Judge Lourdes Santiago in her thorough written opinion issued on June 25, 2019.

I.

We discern the facts from the record developed at a three-day guardianship trial held on June 3, 4, and 5, 2019.  The Division introduced over 100 exhibits and presented testimony from three witnesses:  Mudduser Malik, a State police officer; Teresa Espinal, an adoption worker with the Division; and Dr. Karen D. Wells, an expert in forensic psychology.  Neither Susan nor the

---

[2]  In a separate appeal, the father challenges an order finding that he abused or neglected Guy.  We have issued a separate opinion addressing that appeal.  See N.J. Div. of Child Prot. & Permanency v. S.T. and J.C., No. A-2135-18 (App. Div. June 30, 2020).

A-4878-18T4

father appeared at the trial, and neither of them called any witnesses. Because the facts are detailed in Judge Santiago's comprehensive opinion, we only present a summary.

Susan and J.C. (Joseph) are the biological parents of Guy and M.C. (Mary). Guy was born in December 2013; he was five years old at the time of the trial and currently is six years old. Mary was born in May 2012; she is not the subject of this appeal and at the time of the trial she was in the care of Child Protective Services in Florida. Mary is now united with Guy and living in the same resource home in New Jersey.

Susan has never established a stable home in New Jersey, but she has traveled in and out of the State. The Division first became involved with Susan and her children in 2015, when Susan was arrested for shoplifting while Mary and Guy were with her.

In August 2017, Susan was panhandling with then three-year-old Guy and she was arrested on outstanding warrants for shoplifting and a municipal violation. Two months later, on or about October 20, 2017, the State police stopped Susan and Joseph while they were driving a stolen car on the New Jersey Turnpike. Susan was arrested and detained on an outstanding warrant.

A-4878-18T4

Five days later, on or about October 25, 2017, Joseph was arrested in another stolen car while Guy was with him. Joseph later admitted that he had used heroin earlier that day. Because Susan was still incarcerated and Joseph could not identify any relatives or adults who could immediately care for Guy, the Division removed Guy. Since November 2017, Guy has been in the care of resource parents who are committed to adopting him.

At the time of his removal, Guy was dirty, his teeth were rotten, and he was overweight for his age. During a medical evaluation conducted in November 2017, it was revealed that Guy had not had any immunizations, and he needed extensive dental work because he was at risk of sepsis.

Following Guy's removal, the Division had Susan evaluated and she was found to be suffering from both mental health and substance abuse issues. Susan was diagnosed with major depressive disorder and general anxiety disorder, as well as cocaine and opioid dependency. As a result of her substance abuse, Susan was in and out of jail throughout this litigation, spending over 100 days incarcerated. Consequently, during those periods she was not available to care for Guy. While the litigation was pending, Susan repeatedly tested positive for numerous controlled dangerous substances, including opiates, opioids, cocaine,

THC, and methamphetamine. She attended several treatment programs between October 2017 and May 2019 but failed to complete any of them.

Susan was also unable to secure stable housing or employment. She was often in Massachusetts or New York and missed numerous visits with Guy as a result. She also failed to stay in contact with the Division. The Division was unable to locate Susan between February and April 2018 and again between May and July 2018. Susan also consistently failed to give the Division her contact information.

In March 2019, Dr. Wells conducted a psychological evaluation of Susan on behalf of the Division. Dr. Wells diagnosed Susan with severe opiate (heroin) use disorder and anti-social personality disorder. Dr. Wells also noted that Susan was emotionally and psychologically distressed, and considered Susan's lack of housing and employment stability, lack of support, as well as her criminal history. Dr. Wells concluded that Susan could not safely parent Guy. In making that finding, Dr. Wells opined that Susan was unlikely to change her behavior in the foreseeable future.

In April 2019, Dr. Wells evaluated the bond between Guy and Susan and Guy and his resource parents. Dr. Wells concluded that Guy's bond with Susan was intact, but it was not secure because Guy could not rely on her as a parent.

6

By contrast, Dr. Wells opined that Guy's bond with his resource parents was secure and intact and that he had a positive and loving relationship with his resource parents. Dr. Wells opined that removing Guy from his resource home would be "devastating." In short, Dr. Wells concluded that it was in Guy's best interest that Susan's parental rights be terminated, and that Guy be adopted by his resource parents.

After hearing all the evidence, Judge Santiago issued her decision and entered a judgment on June 25, 2019. She found the testimony of all the Division's witnesses to be credible and uncontroverted. Judge Santiago then made detailed findings of fact and conclusions of law.

Addressing prong one, Judge Santiago found that Guy's health and development had been and would be seriously impaired if his relationship with Susan or Joseph continued. She noted that both Susan's and Joseph's economic and housing instability, coupled with their frequent incarcerations, presented a serious risk to Guy. She also found that Guy had been in poor physical condition at the time of his removal.

With respect to prong two, Judge Santiago found that neither Susan nor Joseph was willing or able to eliminate the harm facing Guy. In that regard, Judge Santiago found that both Susan and Joseph had failed to comply with

substance abuse services and continued in their patterns of criminality and housing and economic instability. The Judge also relied on the unrebutted testimony of Dr. Wells, who opined that neither parent was likely to change her or his behavior.

Turning to prong three, Judge Santiago found that the Division had made extensive efforts to provide services to help both parents. Judge Santiago also found that the Division had made reasonable efforts to explore family placements but had reasonably ruled out those potential placements.

Finally, in examining prong four, Judge Santiago found clear and convincing evidence that termination of Susan's and Joseph's parental rights would not do more harm than good. In making those findings, Judge Santiago relied on the credible and uncontroverted testimony of Dr. Wells.

## II.

On appeal, Susan argues that the family court erred in terminating her parental rights. As noted earlier, she contends that the Division failed to meet its burden on each of the four prongs. We disagree.

A review of the record demonstrates that all of Judge Santiago's findings are supported by substantial credible evidence in the record. See N.J. Div. of Youth and Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citation omitted).

Moreover, Judge Santiago correctly summarized the law and applied the law to her factual findings. See N.J. Div. of Child Prot. & Permanency v. P.O., 456 N.J. Super. 399, 407 (App. Div. 2018). Judge Santiago appropriately relied on the unrebutted and credible testimony of Dr. Wells, who conducted several evaluations and had a factual basis for her opinions. In that regard, our Supreme Court has held that "[i]n a termination of parental rights trial, the evidence often takes the form of expert . . . testimony by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018) (citing Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 30 (1981)).

Susan takes particular exception to Judge Santiago's findings concerning prong two. Susan argues that she proved she could eliminate the harm facing Guy because she was committed to visiting him and displayed effective parenting skills during those visits. In connection with that argument, Susan contends that Dr. Wells testified that Susan expressed a desire to change her behavior during the March 2019 evaluation.

The substantial credible evidence in the record refutes these arguments. The record establishes that Susan missed numerous visits with Guy in part because she had failed to address her substance abuse and housing issues.

Moreover, Dr. Wells noted Susan's continued substance abuse and failure to obtain stable housing when she concluded that Susan could not safely parent Guy.

To the extent we have not addressed Susan's remaining arguments, it is because they are without sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4878-18T4