# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0265-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

V.P.,

     Defendant-Appellant,

and

J.H.P.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.J.P. and
J.H.P., JR., minors.

_____

     Submitted September 9, 2025 – Decided September 22, 2025

     Before Judges Gilson, Perez Friscia, and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FG-14-0024-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Christine Olexa Saginor, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Meaghan Goulding, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

V.P. (Vanessa) appeals from a judgment terminating her parental rights to her daughter, E.J.P. (Eliza), and son, J.H.P., Jr. (Jake), and granting guardianship to the Division of Child Protection and Permanency (the Division) with the plan that the children be adopted by their maternal grandmother, P.J. (Patty).[1] Vanessa argues the Division failed to prove the four prongs of the best-interests test necessary for the termination of her parental rights. N.J.S.A. 30:4C-15.1(a). The Division and the children's Law Guardian urge that we

---

[1] We use initials and fictitious names to protect the privacy interests of the parties and the confidentiality of the record. See R. 1:38-3(d)(12).

affirm the judgment and allow the adoption to proceed. Having reviewed the record in light of the parties' contentions and the applicable law, we affirm substantially for the reasons explained by Judge Michael Paul Wright in his thorough oral opinion read into the record on August 30, 2024.

I.

The facts and evidence are detailed in Judge Wright's oral opinion, which he rendered after a four-day trial. Accordingly, we will only summarize some of the more relevant facts.

Vanessa and J.H.P. (John) are the biological parents of Eliza, who was born in October 2009, and Jake, who was born in January 2012. John executed an identified surrender of his parental rights in October 2023, and he is not involved in this appeal. Vanessa also has an adult son, A.M. (Alex), and an adult daughter, K.M. (Kate), who are emancipated from Vanessa and who are not involved in this appeal.

Vanessa has a history of alcohol abuse, which has led to behavioral issues. The Division first became involved with the family in April 2021, when John called the police with concerns regarding Vanessa's behavior and alcohol use. Following that initial referral, John was awarded sole emergency custody of the

children. John and the children then resided with Patty while Vanessa underwent intensive outpatient treatment for her substance abuse.

The following month, in May 2021, John and the children returned to living with Vanessa. Shortly thereafter, John informed the Division that he planned to divorce Vanessa and move to North Carolina. During the following year, Vanessa had several relapses, which resulted in behavior requiring the police to respond.

In October 2022, the Division received another referral concerning the children's well-being due to Vanessa's drinking. Jake had found a bottle of alcohol in Vanessa's room, which led to an altercation between Vanessa and Alex. When Division workers responded to the family home, they observed Vanessa "staggering" and noted that she "had to use the wall [for] assistance standing up and [that] her speech was slurred." Division workers also noted that "a lot of [Vanessa's] responses did not make sense" and they observed evidence of alcohol throughout the house. Because the Division could not find anyone to stay at the house with the children, they removed the children and placed them with Patty. Early the following morning, Vanessa threatened to harm Alex and his girlfriend, resulting in her arrest for assault and harassment and the issuance of a temporary restraining order.

4

On October 31, 2022, the family court granted the Division custody of the children. Since then, the children have been in the care of their maternal grandmother, Patty.

After the children were removed from Vanessa's care, the Division continued to offer her services, including substance abuse evaluations, urine screenings, intensive outpatient and inpatient treatment, transportation assistance for court-ordered services, opportunities for visitation with her children, multiple action plans, and various family agreements. Despite those services, Vanessa continued to drink, and some of her drug screens were positive, showing that she had used cocaine and marijuana. She also repeatedly refused to engage in the recommended level of alcohol abuse treatment, was unresponsive to the Division's outreach for periods of time, and missed several visits with her children.

In August 2023, Vanessa was arrested and incarcerated in Pennsylvania, on charges of public intoxication, resisting arrest, and lewd acts. Following her release and rearrest, she agreed to engage in an inpatient treatment program so she could be released from jail. In 2024, Vanessa was transferred to a halfway house, and then transitioned into a sober living facility, where she was living at the time of the guardianship trial.

A-0265-24

After her second arrest, in November 2023, the Division filed a complaint for guardianship of the children. A four-day guardianship trial was conducted in May and June of 2024. The Division called four witnesses: Division caseworkers, Amanda Leach and Alleen Larson, the maternal grandmother, Patty, and an expert witness, Dr. Elizabeth Stilwell. The Division also submitted numerous documents into evidence. The Law Guardian called Eliza and Jake to testify. Vanessa presented no witnesses, but she did submit some documents into evidence.

Leach testified about the Division's involvement with the family from September 2022 to June 2023. She described creating an action plan with Vanessa and her attempts to include Vanessa in family team meetings, which Vanessa declined to participate in if Patty was present. She also discussed the children's resistance to attending supervised visits with Vanessa, even with the Division's support and therapeutic efforts. Leach also testified about a conversation she had with Patty in October 2022, during which she explained the differences between adoption and Kinship Legal Guardianship (KLG). After that conversation, Patty signed an acknowledgement form and stated that she wanted to adopt the children rather than have KLG.

Larson testified regarding her contact with the family, her encouragement of the children to visit Vanessa, and efforts to arrange those visits, including having a specific transportation aid with whom the children had become comfortable, provide transportation. She also discussed her efforts to arrange phone contact with the children while Vanessa was incarcerated. Larson noted the children's reluctance but emphasized that Patty did not obstruct visits and, in fact, actively encouraged them. Additionally, Larson testified that she explained the differences between adoption and KLG to Patty. Patty and her husband expressed their preference for adoption over KLG.

Patty testified that, despite loving Vanessa, their relationship was strained because of her alcohol abuse. She denied speaking negatively about Vanessa in front of the children and described improvements in Eliza's and Jake's behavioral and academic performance since being placed in her care. Patty confirmed that she understood the differences between adoption and KLG and expressly stated that she did not want KLG. She also expressed her commitment to adopting the children, stating her belief that adoption would provide them with greater stability and a permanent home. Although Patty did not want court-ordered visitation, she stated that she would permit Eliza and Jake to visit Vanessa if they wished.

A-0265-24

Dr. Stilwell testified about various assessments she conducted in March and April of 2024, including a psychological evaluation of Vanessa, a bonding evaluation between Vanessa and the children, and a comparative bonding evaluation between Patty and the children. She remarked that during the psychological evaluation, Vanessa's minimization of her alcohol abuse was significant, stating:

> [Vanessa] was outwardly cooperative, willing to discuss her history, willing to discuss the reasons for the Division's involvement and . . . her understanding of why the children were removed from her care. But her narrative that she gave in the clinical interview was not entirely consistent with the records. It didn't really capture the extent and the depth of her struggles with substances and her mental health. She also appeared to lack an understanding of . . . just how severely her behavior has impacted the children and their relationship with her.

Dr. Stilwell testified that Eliza and Jake have experienced extensive and prolonged instability, which if continued, would further disrupt their emotional, academic, and interpersonal development. Based on the information she gathered during the psychological evaluation, Dr. Stilwell ultimately concluded that Vanessa "was not currently capable of independently parenting [the children] and was unlikely to become a viable parenting option in the foreseeable future."

8

Based on the bonding evaluations, Dr. Stilwell opined that Eliza and Jake "have an insecure attachment to their mother" and "view her as being unstable and unsafe." In contrast, following her comparative bonding evaluation between Patty and the children, Dr. Stilwell stated that Eliza and Jake "have come to see their grandmother as a reliable and responsive caregiver" and "have very positive relationships with her." She opined that the children have a "healthy and secure attachment" to Patty. Dr. Stilwell ultimately concluded that, to ensure the children's safety and healthy development, Vanessa's parental rights should be terminated and the children adopted by Patty.

Eliza and Jake, then aged fourteen and twelve, respectively, testified that they wanted to be adopted by their grandparents. Although both children affirmed their love for Vanessa, they stated that it was their first choice to be adopted by their grandparents, and that they trusted their grandparents to make good decisions for them.

After considering all the testimony and evidence, on August 30, 2024, Judge Wright found that the Division had proven by clear and convincing evidence the four prongs of the best-interests test necessary for the termination of Vanessa's parental rights. In making that determination, the trial court relied

A-0265-24

on the testimonies of Leach, Larson, and Dr. Stilwell, which he found were "very, very credible" and "particularly credible."

As to the first prong, Judge Wright found that Eliza's and Jake's safety, health, and development had been and would continue to be endangered by a parental relationship with Vanessa due to her "unmitigated alcohol abuse." N.J.S.A. 30:4C-15.1(a)(1). The judge noted that, despite being repeatedly offered services by the Division, Vanessa disregarded treatment recommendations and continued to struggle with alcoholism, resulting in her hospitalization and incarceration. Judge Wright then found that her repeated absences from the children's lives deprived them of nurture and care, which he found to be a cognizable harm. Relying on the expert testimony of Dr. Stilwell, Judge Wright also found that the parental relationship would continue to endanger the children because Vanessa was "abstaining from alcohol and not truly in recovery."

Concerning the second prong, the judge determined that Vanessa was unwilling or unable to eliminate the harm facing her children due to her alcohol abuse and mental health issues. In that regard, the judge noted that Vanessa was unable to maintain sobriety in an outpatient setting and repeatedly refused to follow recommended treatment plans. Further, the judge reasoned that Vanessa

 A-0265-24

remained "entrenched in a state of minimization and denial that [made] it unlikely that she [could] move . . . past and through her recent abstention from alcohol and achieve true sobriety." Judge Wright highlighted Dr. Stilwell's expert testimony that Vanessa was not aware of how her behaviors negatively affected her children and could not now or in the foreseeable future safely parent them.

As to the third prong, Judge Wright first found that the Division had made reasonable efforts to provide Vanessa with services to help correct the circumstances that necessitated the removal of her children. In that regard, the judge detailed that between 2021 and 2024, the Division had repeatedly referred Vanessa to and encouraged her to participate in various substance abuse evaluations and treatment programs, including intensive outpatient programs at various facilities. Judge Wright also found that the Division offered Vanessa additional support, including random urine screenings, psychiatric evaluations, individual therapy, transportation assistance for court-ordered services, opportunities for visitation with her children, multiple action plans, and various family agreements.

Turning to the second component of prong three, the judge found that the record clearly and convincingly established that the Division had explored

11

alternatives to the termination of parental rights. Judge Wright discussed Patty's unwillingness to enter a KLG arrangement with Vanessa, noting her preference for adopting Eliza and Jake. The judge also found that Patty's decision was informed, as she had been made aware of the differences between adoption and KLG, and Patty's decision was motivated by her commitment to provide the children with a stable home environment. Consequently, Judge Wright found that KLG was not a viable alternative to the termination of Vanessa's parental rights.

Lastly, as to prong four, Judge Wright found that the termination of Vanessa's parental rights would not do more harm than good. In support of that finding, the judge relied on Dr. Stilwell's unrebutted expert testimony that Eliza's and Jake's attachment to their mother was neither healthy nor secure, and that terminating Vanessa's parental rights would provide the children with much-needed permanency without resulting in enduring harm. The judge did not rely on the children's placement preferences but instead adopted Dr. Stilwell's expert opinion that the children's best interests would be served by being adopted by Patty.

On September 6, 2024, the trial court entered a judgment of guardianship terminating Vanessa's parental rights to Eliza and Jake. This appeal followed.

12

II.

On appeal, Vanessa contends that the Division failed to prove the four prongs of the best-interests test necessary for the termination of her parental rights. See N.J.S.A. 30:4C-15.1(a). In particular, Vanessa argues that: (1) the Division did not prove a substantial risk of harm to the children based on her history of alcohol abuse; (2) the Division overlooked her efforts to achieve sobriety and remediate her perceived parenting issues; (3) the Division failed to provide the family with appropriate services; (4) the trial court failed to meaningfully consider alternatives to the termination of her parental rights, including KLG; and (5) the trial court erroneously relied on testimony from Dr. Stilwell, whose opinions she alleges were not supported by the totality of the credible evidence. Accordingly, Vanessa argues that the trial court's September 6, 2024 judgment should be reversed. The record and law do not support Vanessa's arguments.

An appellate court's review of a trial court's decision to terminate parental rights is limited. N.J. Div. of Child Prot. & Permanency v. C.J.R., 452 N.J. Super. 454, 468 (App. Div. 2017) (citing N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 278-79 (2007)). An appellate court will not reverse the trial court's "termination decision 'when there is substantial credible evidence in

the record to support the court's findings.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). Moreover, appellate courts defer to the trial court's fact-findings and credibility determinations. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552-53 (2014). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)).

To terminate parental rights, the Division must prove by clear and convincing evidence each element of the "best interests of the child test" codified by N.J.S.A. 30:4C-15.1(a). M.M., 189 N.J. at 280. That test is comprised of the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4)  Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

These prongs "are not discrete and separate," but rather "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

A review of the record establishes that each of Judge Wright's findings concerning the four prongs is supported by substantial credible evidence. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (quoting M.M., 189 N.J. at 279).  Moreover, Judge Wright correctly summarized the law and correctly applied his factual findings to the law.  N.J. Div. of Child Prot. & Permanency v. P.O., 456 N.J. Super. 399, 407 (App. Div. 2018).

Vanessa argues that the Division failed to prove her alcohol abuse rose to the level of harm necessary to establish the first prong.  In that regard, she contends that she attempted to maintain a relationship with her children, emphasizing her participation in visitation, voluntary engagement in treatment programs, transition to sober living, and attendance at individual therapy sessions.

The evidence at trial, however, supported Judge Wright's findings that Eliza and Jake were harmed by Vanessa's alcohol abuse and neglect.  Among

15

other evidence, the judge relied on Dr. Stilwell's unrebutted testimony that Vanessa's "substance use and untreated mental health have resulted in repeated incidents of abuse and neglect . . . and placed [Eliza] and [Jake] at unacceptable risks of harm." At trial, Dr. Stilwell credibly opined that Eliza and Jake have experienced extensive and prolonged instability due to Vanessa's alcohol abuse, which, if continued, would disrupt their emotional, academic, and interpersonal development. She further testified that Vanessa "lack[ed] an understanding of . . . just how severely her behavior has impacted the children," and that, despite her children's need for permanency, Vanessa was not capable of independently parenting them or becoming a viable parenting option in the foreseeable future.

Concerning prong two, Vanessa contends that the trial court overlooked her efforts to achieve sobriety and remediate her parenting issues. She highlights that she was residing at a sober living facility and participating in individual therapy at the time of trial. Dr. Stilwell, however, explicitly acknowledged those facts but credibly opined that Vanessa was not capable of independently parenting the children, nor was she likely to become a viable parenting option in the foreseeable future. Dr. Stilwell also testified that Vanessa was in a state of abstention, rather than sobriety, given her lack of

insight and internal motivation to truly recover. Judge Wright accepted and relied on those unrebutted opinions.

Concerning prong three, Vanessa asserts that the Division failed to offer her services designed to address the circumstances of her family and did not consider the impact that failure had on her reunification efforts. Additionally, Vanessa contends that the trial court gave undue weight to Patty's preference for adoption and did not consider other alternatives to the termination of her parental rights.

There was ample evidence supporting Judge Wright's finding that the Division provided Vanessa with numerous services. Moreover, regarding KLG, we have recognized that the preference of a prospective caregiver may properly be considered. In that regard, we have explained: "[T]he caregiver must be fully informed of the potential benefits and burdens of KLG before deciding whether he or she wishes to adopt. Once he or she is provided with that comparative information, the caretaker's preference between the two alternatives should matter." N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 263 (App. Div. 2019). See also N.J. Div. of Youth & Family Servs. v. T.I., 423 N.J. Super. 127, 136-37 (App. Div. 2011) (rejecting the plaintiff-mother's argument that the family court erred by allowing the grandfather to "effectively

exercise veto power over KLG" by expressing his preference for adoption and holding "[t]here is no statutory authority that establishes any burden a caregiver who wants to adopt must meet in rejecting KLG").  Nevertheless, although the resource parent or caregiver's preference is relevant, it is not dispositive.  M.M., 459 N.J. Super. at 264.  Thus, Judge Wright properly considered Patty's informed preference for KLG over adoption.

In challenging the fourth prong, Vanessa contends that the trial court erroneously relied on testimony from Dr. Stilwell, whose opinion she alleges was not supported by the totality of credible evidence.  Vanessa had objected to portions of Dr. Stilwell's testimony at trial, arguing that (1) her expert report did not address the appropriateness of KLG, so any testimony on this topic would cause undue surprise; (2) she was not qualified to testify about whether KLG was appropriate; (3) she was not qualified to testify regarding the severity of Vanessa's alcohol abuse; and (4) she was potentially biased, as she spoke with Patty for forty minutes but did not interview Vanessa.

Judge Wright, however, addressed each of these objections and found that (1) Dr. Stilwell's testimony regarding KLG—a common permanency option— did not constitute an undue surprise; (2) Dr. Stilwell was qualified to testify about the appropriateness of KLG because the record demonstrated her

18

understanding of the differences between adoption and KLG; (3) she was qualified to discuss Vanessa's alcohol abuse, as she was not providing her own diagnosis but rather referencing credible information from the record; and (4) as to the weight of her testimony, and potential bias, her expert opinion was "particularly credible."

In that regard, we "defer to the trial court's assessment of expert evaluations." N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 221 (App. Div. 2013) (citing In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999)). Indeed, our Supreme Court has noted: "In a termination of parental rights trial, the evidence often takes the form of expert opinion testimony by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018).

Judge Wright found that termination of Vanessa's parental rights would not result in more harm than good. That finding was based on Dr. Stilwell's unrebutted expert testimony, including the doctor's opinion that Eliza's and Jake's bonds with their mother were "neither healthy nor secure," and that termination would provide the children with essential permanency without inflicting lasting harm.

A-0265-24

Indeed, we have affirmed the termination of parental rights in favor of adoption where "the resource placements would not result in greater harm than good." See N.J. Div. of Child Prot. & Permanency v. D.C.A., 474 N.J. Super. 11, 29 (App. Div. 2022). Here, Dr. Stilwell credibly concluded that terminating Vanessa's parental rights so that the children could be adopted by Patty would not do them more harm than good.

In short, we reject each of Vanessa's arguments and affirm the judgment because the facts underlining the judgment are supported by substantial credible evidence and it's legal conclusions are based on well-established law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0265-24